**Affirmed as Modified; Opinion Filed May 22, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01494-CV

### VIRGINIA ROE HINTON F/K/A VIRGINIA ROE BURNS, Appellant
### V.
### DENIS LYONS BURNS, Appellee

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-51720-2012**

## OPINION

Before Justices Lang-Miers, Myers, and Lewis
Opinion by Justice Myers

In this divorce proceeding, the trial court made findings of fact and conclusions of law after a two-day bench trial and rendered a final decree of divorce. In the decree, the trial court divided the marital estate, awarded a reimbursement to the separate estate of appellee Denis Lyons Burns, and burdened specific separate property of appellant Virginia Roe Hinton[1] with an equitable lien to secure the judgment. In ten issues, Hinton complains of the trial court's judgment. We modify the trial court's judgment to delete the imposition of the equitable lien. As modified, we affirm the trial court's judgment.

---

[1] The decree of divorce grants appellant's request to change her name to Virginia Roe Hinton.

BACKGROUND

Hinton and Burns were married on May 15, 2009. There are no children of the marriage. The parties were separated twice during their three-year marriage. Hinton filed for divorce on April 4, 2012. Burns filed a counter-petition seeking reimbursement for funds he alleged his separate estate had expended for the benefit of the community. A bench trial was held on September 12 and 13, 2012. Hinton, Burns, and several other witnesses testified.

The evidence offered at trial showed that both Burns and Hinton brought separate property to the marriage. Burns inherited sums from his family's estate, and he owned several business entities. Hinton owned a home on Tolleson Drive in Celina, Texas (the "Celina home"). She also owned real property in Hill County, Texas as well as certain livestock. At trial, both parties offered expert testimony to trace the property each claimed as separate. Hinton offered the testimony of Stephen A. Fuqua. Burns is a certified public accountant and testified regarding a tracing of property he had prepared himself.

The largest community asset consisted of seventy-seven acres of land in Cooke County, Texas owned by a limited liability company called The Big O Ranch LLC (the "Ranch LLC"). Hinton and Burns each owned fifty percent of this entity. The Ranch LLC purchased the land in June 2010 for a purchase price of $307,428, or approximately $4,000 per acre. The Ranch LLC made a down payment of $73,200.45, and the seller carried a note for $232,428. The parties agreed that the outstanding debt for the ranch at the time of trial was $211,000 on the seller's note. The parties agreed that both Burns and Hinton contributed separate property funds for the purchase of the real estate and that Hinton's contribution was $16,100. The parties agreed that Burns made a separate property contribution of approximately $40,000, but Burns also testified that he contributed an additional $20,000 of separate property that he borrowed from a Burns family trust. Burns testified that the fair market value of the ranch at the time of trial was

$271,000, or approximately $3,500 per acre. Hinton contended that the value had increased to $5,000 per acre, but the trial court excluded expert opinion testimony offered by Hinton on this subject because she failed to designate her expert witness prior to trial.

Burns testified that he contributed his entire inheritance of approximately $288,000[2] to the community. He also testified about several business entities. He testified that his accounting firm, the Burns Firm Ltd., existed before the marriage and was his separate property. He testified that the community borrowed $51,447 from the Burns Firm Ltd. during the marriage that was not repaid. BFI Development, Inc. is also an entity through which Burns did business prior to the marriage and in which Hinton claims no interest. Burns testified that the community borrowed $3,000 from BFI Development, Inc. during the marriage that was not repaid. He also testified that he is the sole owner of D. Burns Management, a separate entity from which the community borrowed $12,033. Burns testified that during the marriage, the community would periodically borrow money from these entities that was deposited into the checking account for the community and used for community expenses. Hinton also admitted that an entity known as Custer/Hedgecoxe was Burns's separate property.

Hinton lives in the Celina home. The record reflects that at the time of the parties' final separation, Burns was living in a trailer on the Cooke County ranch. The parties refer to this trailer as the "FEMA trailer." The record also reflects that during the course of the divorce proceedings, Hinton removed both the trailer and the property in it from the ranch. In a pretrial hearing, the trial court ordered Hinton to return the trailer and the property in it to Burns, but at trial, Burns contended Hinton had returned only a few of the items in question. Hinton testified

---

[2] Although Burns testified throughout trial that the amount of his inheritance was $327,000, he concedes in his brief that this total results from double-counting one of the inheritance checks. The $327,000 total also includes a check from the Custer/Hedgecoxe entity dated prior to the marriage in the amount of $35,564.51. It is not clear whether Burns claimed this amount as part of his inheritance or as a contribution from one of his separate property business entities. In either event, Burns established that the funds were his separate property acquired before the marriage, as we discuss below.

she had already returned everything except the FEMA trailer. The trial court also heard conflicting testimony on several other matters. Hinton testified that her horses and cattle had been removed from the ranch without her permission and she was unaware of their location until immediately before trial. Hinton also testified about loans she made to Burns prior to marriage; Burns contended he had repaid the loans in full. Hinton testified that a particular tractor had been a gift from Burns; Burns disagreed. Hinton requested that the Ranch LLC be divided; Burns testified that division would be "an absolute disaster."

Neither party offered evidence regarding the total value of either the community estate or the parties' separate estates. Accordingly, neither the divorce decree nor the trial court's findings of fact and conclusions of law include findings on the total value of the assets and liabilities to be divided. Instead, the trial court made findings as to particular items of property that it characterized as separate or community property and divided the assets and liabilities of the marital estate. The trial court awarded the Ranch LLC, the property owned by it, and the associated debt to Burns. The trial court found that the FEMA trailer was community property and awarded it to Burns. A John Deere tractor claimed by both parties was confirmed as Hinton's separate property and awarded to her. The trial court also confirmed that the Celina home, the Hill County property, two horses, one Black Angus cow, and two longhorn cows were Hinton's separate property.

The trial court found that Burns's separate estate was entitled to reimbursement in the amount of $62,000 from the community estate. The trial court awarded judgment in that amount to Burns and also imposed an equitable lien of $62,000 on Hinton's separate property. The lien was divided into two parts. The court attributed $5,000 of the lien to the value of the FEMA trailer, and the remaining $57,000 "for reimbursement to [Burns] for contributions made with [his] separate property." Both portions of the lien were imposed on "all property that Virginia

–4–

Roe Burns owns," including the Celina home, the Hill County property, two horses, one Black Angus cow, two longhorn cows, and the John Deere tractor. The trial court imposed the $5,000 lien "until the FEMA trailer is returned to Mr. Burns." The divorce decree also provides that "to the extent legally permitted, Denis Lyons Burns is granted a possessory lien on these assets until the judgment is paid in full." Burns concedes that the Celina home is Hinton's homestead. He does not contend, and the trial court did not find, that the community funds to be reimbursed were spent to improve Hinton's separate property on which the lien was imposed.

The trial court rendered a final decree on November 2, 2012, and signed findings of fact and conclusions of law on January 13, 2013. This appeal followed.

## STANDARD OF REVIEW

Hinton's ten issues on appeal challenge the trial court's division of property. We review a trial court's division of property under an abuse of discretion standard. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *Id.* In family law cases, the abuse of discretion standard of review overlaps with the traditional sufficiency standards of review; as a result, legal and factual sufficiency are not independent grounds of reversible error, but instead constitute factors relevant to our assessment of whether the trial court abused its discretion. *Id.*; *see also In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.) (discussing standard). To determine whether the trial court abused its discretion we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in its exercise of that discretion. *In re A.B.P.*, 291 S.W.3d at 95. The applicable sufficiency review comes into play with regard to the first question. *Moroch*, 174 S.W.3d at 857. We then proceed to determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.*

Further, when the burden of proof at trial is by clear and convincing evidence, as it is for a party seeking to rebut the presumption that a specified item of property is community property, we apply a higher standard of legal and factual sufficiency review. *Id.* Clear and convincing evidence is defined as that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014). This intermediate standard falls between the preponderance standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *Moroch*, 174 S.W.3d at 857. The proof must weigh more heavily than the greater weight of the credible evidence, but the evidence need not be undisputed. *Id.* at 857–58.

In reviewing the evidence for legal sufficiency, we look at all the evidence, in the light most favorable to the judgment, to determine if the trier of fact could reasonably have formed a firm belief or conviction that its finding was true. *Id.* at 858. We must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *Id.* In reviewing the evidence for factual sufficiency, we must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing and then determine whether, based on the entire record, a fact finder could reasonably form a firm conviction or belief that the allegations in the petition were proven. *Id.*

## CHARACTERIZATION OF PROPERTY

Before reviewing Hinton's issues regarding the entire marital estate, we address her complaint regarding the characterization of two specific assets. In her seventh and eighth issues, Hinton challenges the trial court's characterization of a Vanguard individual retirement account and a New York Life annuity as community property. Hinton argues she conclusively proved that both the IRA and the annuity were her separate property. Hinton concedes that an error in characterization constitutes reversible error only if "the error materially affected the just and

right division of the community estate."   *Sink v. Sink*, 364 S.W.3d 340, 343 (Tex. App.—Dallas 2012, no pet.).

Hinton testified that she acquired the annuity in 2003 and the IRA "[p]robably about the same time."   Burns testified that he agreed the IRA was Hinton's separate property.   On her inventory list submitted as Petitioner's Exhibit 2 at trial, Hinton lists the IRA with a market value of $1,000, and the date purchased as October 28, 2003.   On the same exhibit, she lists the annuity with a market value of $3,000, and the date purchased as December 9, 2003.   The exhibit shows account numbers for both the annuity and the IRA.   Hinton submitted a 2010 Form 1099-R as Petitioner's Exhibit 12, and four check confirmations dated June 10, 2010, as Petitioner's Exhibits 13 through 16.   These exhibits are relevant only to the IRA, post-date the marriage, and do not reveal the date of purchase.

In finding of fact 4.j, however, the trial court found that the IRA and the annuity were acquired during the marriage and their values were not in dispute.   The decree of divorce awards both to Hinton.   In *Viera v. Viera*, 331 S.W.3d 195, 207–08 (Tex. App.—El Paso 2011, no pet.), the court found that similar evidence, consisting of a husband's testimony and his sworn inventory unsupported by "other evidence such as periodic account statements, bank records, or employment payroll records" was insufficient to trace the funding of the husband's pension accounts to any property owned before marriage.   The court concluded the husband failed to prove by clear and convincing evidence that the pension was part of his separate estate.   *Id.* at 207.   The court further concluded, however, that the trial court's error in characterizing the property as separate was not harmful because there was no evidence it affected the just and right division of the community estate.   *Id.* at 208.

Burns argues that even if the trial court erred in its characterization of the IRA and the annuity as community property, any effect on the just and right division of the marital estate was

de minimis because of the small value of each account in comparison to the estate as a whole. *See Sink*, 364 S.W.3d at 343. We agree. As will be discussed below, Hinton did not offer evidence of the value of all of the community assets, and therefore failed to demonstrate that the trial court disproportionately divided the community estate in Burns's favor. We overrule Hinton's seventh and eighth issues.

## REIMBURSEMENT

In her first and fourth issues, Hinton challenges the sufficiency of the evidence to support the trial court's findings that Burns was entitled to reimbursement from the community estate, and contends the trial court abused its discretion by granting Burns's reimbursement claims. Hinton contends that Burns failed to prove by clear and convincing evidence that the funds in question were his separate property. She also argues that Burns failed to trace his separate property funds to community assets and failed to prove that the expenditures were reimbursable.

**Applicable law.** Section 3.402 of the Texas Family Code governs claims for reimbursement. TEX. FAM. CODE ANN. § 3.402 (West Supp. 2013). As relevant here, a claim for reimbursement includes payment by one marital estate of the unsecured liabilities of another marital estate, as well as reduction of the principal amount of certain debts. *See id.* § 3.402(a)(1), (5). The rule of reimbursement is purely an equitable one. *Vallone v. Vallone*, 644 S.W.2d 455, 458 (Tex. 1982) (citing *Colden v. Alexander*, 171 S.W.2d 328 (Tex. 1943)); *see also* TEX. FAM. CODE ANN. § 3.402(b) (court shall resolve claim for reimbursement by using equitable principles). A right of reimbursement arises when the funds or assets of one estate are used to benefit and enhance another estate without itself receiving some benefit. *Vallone*, 644 S.W.2d at 459. The supreme court has also described a right of reimbursement as "an economic interest possessed by a spouse who has contributed to the improvement of property awarded to the other spouse." *Heggen v. Pemelton*, 836 S.W.2d 145, 148 (Tex. 1992).

The party claiming the right of reimbursement has the burden of pleading and proving that the expenditures and improvements were made and that they are reimbursable. *Vallone*, 644 S.W.2d at 459. The court may not recognize a marital estate's claim for reimbursement for the living expenses of a spouse, contributions of property of a nominal value, or payment of a liability of a nominal amount, among other specified claims. TEX. FAM. CODE ANN. § 3.409 (West 2006). Reimbursement is not available as a matter of law, but lies within the discretion of the court. *Vallone*, 644 S.W.2d at 459.

Property possessed by either spouse during or on the dissolution of marriage is presumed to be community property. TEX. FAM. CODE ANN. § 3.003(a) (West 2006). Property owned before marriage, or acquired during marriage by gift, devise, or descent, is separate property. *Id.* § 3.001. The degree of proof necessary to establish that property is separate property is clear and convincing evidence. *Id.* § 3.003(b). Thus, a spouse making a claim for reimbursement on behalf of a separate estate must prove by clear and convincing evidence that the funds expended on behalf of the community estate were separate funds. *See Moroch*, 174 S.W.3d at 856 (discussing former statutory scheme of economic contribution). The presumption that property possessed by either spouse on dissolution of the marriage is community is rebuttable and is overcome by evidence that a specified item of property is the separate property of one spouse or the other. *Id.* Because the presumption is rebuttable, the general rule is that, to discharge the burden imposed by the statute, a spouse must trace and clearly identify property claimed as separate property. *Id.* (citing *McKinley v. McKinley*, 496 S.W.2d 540, 543 (Tex. 1973)). The burden of tracing is a difficult, but not impossible, burden to sustain. *Id.* Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property. *Id.* at 856–57.

**Burns's tracing.** In her first issue, Hinton argues that there is insufficient evidence to support the trial court's $57,000 reimbursement to Burns from the community estate. She contends that Burns (1) failed to show the funds were separate property; (2) failed to trace separate property funds to community assets; and (3) failed to show reimbursable expenditures. In her fourth issue, Hinton contends that the trial court abused its discretion by granting Burns's reimbursement claims.

Burns claimed reimbursement for contributions made from his separate property to the community estate in the amount of $117,319.77. He also claimed that he had loaned the community the additional amount of $66,480 from his separate funds. The trial court did not render judgment for Burns for either of these amounts. Instead, the trial court awarded a total of $62,000 to be reimbursed to Burns, $5,000 of which was attributable to the FEMA trailer. The reimbursement results from the trial court's finding that Burns contributed $57,000 of his separate property to the community estate during the marriage. To uphold the trial court's judgment, we must determine if Burns proved by clear and convincing evidence that $57,000[3] of his separate property was contributed to the community estate, and that the contribution was reimbursable. *See Roberts v. Roberts*, 402 S.W.3d 833, 838 (Tex. App.—San Antonio 2013, no pet.) (spouse seeking reimbursement must establish that contribution was made by one marital estate to another, that contribution was reimbursable, and value of contribution).

We review the evidence to support the trial court's finding. Burns testified that he is a certified public accountant. He explained that as a "common part" of his accounting practice, he has testified "in litigation matters and family law matters and tracing matters, evaluation matters." He stated that he has testified "in a family law case regarding tracing" approximately "10 to 15 times" in his twenty-five year career, and has attended family law seminars. The trial

---

[3] We address Hinton's issues regarding the FEMA trailer in a separate discussion below.

court overruled Hinton's objection that Burns was not qualified as an expert witness, and Hinton does not challenge Burns's expertise on appeal.

Burns offered evidence that he received five checks prior to the marriage and one check after the marriage as an inheritance from his family's estate. He also offered evidence of a check from the Custer/Hedgecoxe entity dated prior to the marriage in the amount of $35,564.51. Copies of these checks were introduced into evidence, showing a total amount of $287,564.51. The checks are dated between November 9, 2007, and October 15, 2010. The largest single check, in the amount of $150,000, was dated approximately one month before the parties' marriage. Under section 3.001 of the Family Code, Burns's inheritance is his separate property. *See* TEX. FAM. CODE ANN. § 3.001 (spouse's separate property consists of property owned or claimed by spouse before marriage, and property acquired during marriage by gift, devise, or descent). Burns testified at trial that none of his inheritance was left because he contributed the entire amount to the community. And as noted above, Burns testified that three corporate entities, his separate property, loaned the community an additional $66,480.

Burns's tracing schedule, offered into evidence as Respondent's Exhibit 9, shows deposits to and debits from a checking account that the trial court found to be an asset of the community. Burns testified that he prepared the tracing because he had contributed "significant separate assets" to the community "on a continuous and regular basis" throughout the marriage, but Hinton was "keeping her assets separate." He also testified that in the tracing schedule he did not request reimbursement for any living expenses. Burns testified that in preparing the tracing schedule, he applied the "community out first" rule. *See Zagorski v. Zagorski*, 116 S.W.3d 309, 319–20 (Tex. App.–Houston [14th Dist.] 2003, pet. denied) ("when separate and community property are commingled in a single bank account, we presume the community funds are drawn out first, before separate funds are withdrawn").

–11–

Exhibit 9 reflects transactions between May 18, 2009, a few days after the parties' marriage, until June 25, 2012, after Hinton filed for divorce but before trial. Burns requests reimbursement for approximately seventy of the 2400 entries on his tracing, for a total of $117,319.77. Among these entries are amounts spent on several cows, a generator, a timeshare in Mexico, furniture, and mortgage payments on the ranch. Exhibit 9 reflects deposits made from the three corporate entities as well as transfers from savings. Hinton did not contest that the corporate entities were Burns's separate property. Although Burns did not offer documentary evidence of the deposit of his inheritance checks into the account that is the basis for his tracing, he testified that he had depleted his entire inheritance in the expenditures traced through Exhibit 9. Exhibit 9, supported by Burns's testimony and the documentary evidence including his inheritance checks, was sufficient to establish by clear and convincing evidence that the $57,000 amount found by the trial court was Burns's separate property; that Burns made expenditures on behalf of the community with his separate property; and that the expenses were reimbursable. *See Vallone*, 644 S.W.2d at 459; *see also Pace v. Pace*, 160 S.W.3d 706, 714 (Tex. App.— Dallas 2005, pet. denied) (testimony of spouse seeking to overcome community presumption may be sufficient to meet clear and convincing standard without corroboration). We overrule Hinton's first and fourth issues.

**FEMA trailer.** Hinton's second and third issues challenge the trial court's findings regarding the FEMA trailer. Hinton alleges that the trailer is owned by her mother, Inez Peterson. At the time Hinton filed for divorce, the trailer was located on the property of the Ranch LLC. Hinton alleges that before she filed for divorce, she agreed to buy the trailer from Peterson for the sum of $4,500 in monthly payments of $500. Hinton alleges she made several payments to her mother for a total of $2,000. Hinton then decided to file for divorce and informed Peterson that she could no longer make payments on the trailer. Hinton testified that

Peterson refunded the money and took the trailer back. Hinton contends that title remained in Peterson's name, as did the insurance policy covering the trailer. The trial court, however, found that the trailer was community property of the marriage and awarded it to Burns. The court also imposed an equitable lien on Hinton's separate property in the amount of $5,000 "until the FEMA trailer is returned" to Burns.

Hinton challenges the sufficiency of the evidence to support the trial court's finding that the trailer was part of the community estate. The evidence at trial consisted of Hinton's testimony and Petitioner's Exhibits 87, 88, and 89. Exhibit 89 includes four checks in the amount of $500 each to Peterson, dated September 15, October 18, November 20, and December 15, 2011.[4] Hinton testified that Peterson paid her "$1500 or $1800 back for the trailer" which Hinton deposited in her bank account and used to pay her attorneys. Exhibit 89 includes a deposit slip dated April 3, 2012, in the amount of $4,800, with the handwritten notation "for attorney fees." The $4,800 total is broken down as $3,000 "retirement," with an attached check, and an $1800 "loan." The source of the loan is not apparent from the exhibit. Exhibit 87 is a copy of a Texas Certificate of Title dated February 3, 2011, showing Peterson as the owner of a 2006 Gulf trailer. Exhibit 88 is a Texas Liability Insurance Card effective May 5, 2012 to November 5, 2012, showing the same trailer as the vehicle covered and Peterson as the insured. Hinton testified Peterson currently owns the trailer. Hinton also testified that she had never insured the trailer.

Hinton admitted that the trailer was on the property of the Ranch LLC at the time she filed the divorce. Hinton also admitted in her brief that she removed the trailer and other items from the ranch during the divorce proceedings. On cross-examination, Hinton admitted that the

---

[4] The checks are on a Northern Trust account of "Virginia Gail Hinton Revocable Living Trust, Jenny Hinton, Trustee." The address of the trust is Hinton's home in Celina.

trial court had previously ordered her to return the trailer to Burns, but she had not done so. She testified that she did not know where the trailer was currently located because "it's not mine." She testified that she asked Peterson to return it, but Peterson refused to do so and refused to inform Hinton of the trailer's location. Hinton testified that she had no control over the trailer, but would return it if she did. On appeal, she contends the evidence was undisputed that the trailer was not part of the community estate.

Burns alleges that after the divorce was filed, he was living in the trailer on the ranch until Hinton removed it from the property. He contends the trial court did not abuse its discretion by characterizing the trailer as community property or by awarding the trailer to him.

The undisputed evidence shows that during the marriage, Hinton made payments to Peterson to purchase the trailer. Thus, the trial court did not err by characterizing the trailer as community property unless Hinton proved otherwise by clear and convincing evidence. *See* TEX. FAM. CODE ANN. § 3.003; *Sink*, 364 S.W.3d at 344. Hinton argues the evidence is undisputed and corroborated that Peterson owns the trailer, citing *Zagorski* for the proposition that corroboration of undisputed testimony may establish the separate property characterization of an asset. *See Zagorski*, 116 S.W.3d at 317. In *Zagorski*, however, three witnesses corroborated the husband's evidence regarding the source of the funds in question, and their testimony was "bolstered by documentation." *See id.* Here, although Hinton testified she sold the trailer back to Peterson, this testimony is not corroborated by other witnesses or bolstered by documentation. Exhibit 87, the certificate of title, predates the payments made by Hinton for the trailer. And Exhibit 89 does not reveal either the source or the purpose of the $1,800 "loan" it reflects. In addition, the trial court had considered evidence regarding the trailer and its removal

from the ranch at a previous hearing and ordered its return to Burns.[5] Although Exhibit 88 shows Peterson renewed insurance on the trailer after Hinton filed for divorce, the trial court could have found that this exhibit and Hinton's testimony were not sufficient to overcome the presumption that the trailer was community property. *See* TEX. FAM. CODE ANN. § 3.003 (presumption of community property); *Moroch*, 174 S.W.3d at 856 (clear and convincing proof required to overcome presumption). We conclude the trial court did not err by characterizing the trailer as community property.

Hinton also argues that Burns's "reimbursement claim relating to the trailer must fail" because there is no evidence that Burns's separate estate "made any improvements to the trailer, paid down debt on the trailer, or otherwise incurred any reimbursable expense with respect to the trailer." In support, she cites section 3.402(a) of the Family Code, which provides a list of reimbursable claims. *See* TEX. FAM. CODE ANN. § 3.402(a). Burns responds that even if the trial court made an error by "mislabeling" a $5,000 judgment against Hinton for the trailer as a "reimbursement," Hinton failed to show how she has been harmed by the error. We agree. In either case, Hinton must return the trailer to Burns or pay him $5,000. And in either case, the trial court could have awarded the trailer to Burns as part of a just and right division of the marital estate. Hinton failed to show that the trial court abused its discretion. *See Sink*, 364 S.W.3d at 343. We overrule Hinton's second and third issues.

## EQUITABLE LIEN

In her fifth and sixth issues, Hinton asserts that even if the $62,000 reimbursement is supported by the evidence, the trial court erred by imposing a lien on her separate property to secure it. Hinton contends that the imposition of the entire lien was error, and in particular

---

[5] Although our record does not include the pleadings or evidence from this hearing or the subsequent order, Hinton conceded at trial that the court had ordered her to return the trailer to Burns.

complains of the lien imposed on her separate property homestead. Citing *Heggen*, 836 S.W.2d at 148, Hinton argues that a lien imposed on a separate property homestead to secure a reimbursement interest is not permitted under the Texas Constitution. She also argues that a lien imposed on separate property is "invalid unless the property upon which the lien is imposed was the subject of the reimbursement claim," citing *Winkle v. Winkle*, 951 S.W.2d 80, 87 (Tex. App.—Corpus Christi 1997, pet. denied). To support the second argument, Hinton also cites section 3.406 of the Family Code, noting that it has been amended to provide that "equitable liens to secure reimbursement claims are limited to the property benefitted." *See* TEX. FAM. CODE ANN. § 3.406(a) (West Supp. 2013) (regarding equitable liens).

We sustain Hinton's complaints. Hinton offered evidence that the Celina home was her separate property and her homestead, and Burns did not contend otherwise. But Burns argues that the equitable lien is appropriate because the final decree of divorce grants the lien only "to the extent legally permitted." If the Celina home ceases to become Hinton's homestead at some point in the future, Burns argues, then the equitable lien would be "legally permitted" at that time. The only evidence offered at trial, however, was that the Celina home was Hinton's separate property, and that she lived there. The equitable lien imposed by the trial court on Hinton's homestead was invalid. *Heggen*, 836 S.W.3d at 148 (lien on separate property homestead invalid where lien did not fit in any category allowed by Texas Constitution).

We also agree that an equitable lien may be imposed only on property in a marital estate (here, Hinton's separate property) *benefited* by an economic contribution from another marital estate (here, Burns's separate property). Although the Family Code previously provided that a contribution claim could be secured by an equitable lien "on the entirety of a spouse's property in the marital estate and is not limited to the item of property that benefited from an economic

contribution," that section was repealed in 2009.[6] Act of May 18, 2001, 77th Leg., R.S., ch. 838, § 2, sec. 3.406(c), 2001 Tex. Gen. Laws 1679, 1682, *repealed by* Act of May 19, 2009, 81st Leg., R.S., ch. 768, § 11(4), 2009 Tex. Gen. Laws 1950, 1953; *see also Delancey v. Delancey*, No. 03-12-00116-CV, 2013 WL 150302, at *3 n.4 (Tex. App.—Austin Jan. 11, 2013, no pet.) (mem. op.) (noting amendment and applying previous version of statute).

In correctly applying the former statute to the case before it, the *Delancey* court explained that the now-deleted language "recognizes that fairness requires that an equitable lien be available to secure a contribution claim even if the property originally contributed to has been disposed of by the other party." *Delancey*, 2013 WL 150302, at *3 n.4. Nonetheless, the legislature deleted the language. *See Lenhard v. Butler*, 745 S.W.2d 101, 106 (Tex. App.—Fort Worth 1988, writ denied) (appellate court is prohibited from supplying a meaning or word which was intentionally deleted from statute by legislature merely to make statute conform to court's own notions of justice). The Family Code now provides:

> On dissolution of a marriage, the court may impose an equitable lien *on the property of a benefited marital estate* to secure a claim for reimbursement *against that property* by a contributing marital estate.

TEX. FAM. CODE ANN. § 3.406(a) (emphasis added).[7] There is no evidence that the property on which the trial court imposed the equitable lien, that is, Hinton's separate property, was benefited by a contribution from Burns's separate property.

Although Burns cites numerous cases for the proposition that "[a]n equitable lien may be imposed on one spouse's separate property to secure an award of community property to the

---

[6] Before 2009, the Family Code provided for "economic contribution," a statutory right of reimbursement for contributions by one marital estate to another. *See, e.g., Nelson v. Nelson*, 193 S.W.3d 624, 628 (Tex. App.—Eastland 2006, no pet.) (citing former section 3.402). In 2009, the sections of the Family Code addressing economic contribution were amended to provide instead for reimbursement and offset between marital estates. *See, e.g.*, TEX. FAM. CODE ANN. § 3.402 (West Supp. 2013) (claims for reimbursements and offsets).

[7] Before the 2009 amendments, subsection (a) did not include the words "benefited," "reimbursement against," or "contributing," and was mandatory. *See* Act of May 18, 2001, 77th Leg., R.S., ch. 838, § 2, 2001 Tex. Gen. Laws 1679, 1682, *amended by* Act of May 19, 2009, 81st Leg., R.S., ch. 768, § 5(a), 2009 Tex. Gen. Laws 1950, 1952 ("On dissolution of a marriage, the court shall impose an equitable lien on property of a marital estate to secure a claim for economic contribution in that property by another marital estate.").

–17–

other spouse," these cases all pre-date both *Heggen* and the 2009 amendment, with the exception of *Dailey v. Dailey*, No. 02-12-00097-CV, 2013 WL 105667, at *5–6 (Tex. App.—Fort Worth Jan. 10, 2013, no pet.) (mem. op.). Citing *Heggen* for the proposition that the "trial court may impose equitable liens on one spouse's separate property as a means for securing the discharge of payments owed by one spouse to the other," the court in *Dailey* held that the trial court did not err by imposing an equitable lien against the husband's separate property to secure a monetary award to the wife. *Id.* The court noted that it had previously "rejected our sister court's position that such liens are permissible only against the separate property to which an improvement was made at community expense." *Id.* at *5 n.4 (citing *Mullins v. Mullins*, 785 S.W.2d 5, 11–12 (Tex. App.—Fort Worth 1990, no writ), as rejecting the reasoning in *Smith v. Smith*, 715 S.W.2d 154, 161 (Tex. App.—Texarkana 1986, no writ)). The *Dailey* court, however, did not mention or discuss the applicable Family Code provisions on equitable liens. *See id.* at *5–6. Here, where Hinton has raised the argument and relies on the 2009 statutory language, we conclude her complaint is well-taken and sustain her fifth and sixth issues.

## JUST AND RIGHT DIVISION

In her ninth issue, Hinton complains that the trial court abused its discretion by making a disproportionate division of the community estate in favor of Burns. In her tenth issue, Hinton contends that the trial court's errors of law warrant reversal because those errors probably caused the rendition of an improper judgment. She argues these issues together in her brief. She contends that she received only nine percent of the community estate, while Burns received ninety-one percent. Citing *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981), Hinton contends the record does not support such a disproportionate division. *See id.* (trial court may consider many factors in exercising its broad discretion to divide marital property, including relative

earning capacity, parties' relative physical and financial conditions, size of separate estates, and nature of property).

Under section 7.001 of the Family Code, in a decree of divorce the trial court "shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party . . . ." TEX. FAM. CODE ANN. § 7.001 (West 2006). We presume on appeal that the trial court correctly exercised its discretion when dividing property in a divorce proceeding, and the appellant bears the burden to show from the record that the division was so disproportionate and thus unfair that it constitutes an abuse of discretion. *O'Carolan v. Hopper*, 414 S.W.3d 288, 311 (Tex. App.—Austin 2013, no pet.).

The trial court did not value the community estate in its findings of fact and conclusions of law, and Hinton does not challenge the trial court's failure to do so. Hinton's calculations assume that net of debt, the Ranch LLC awarded to Burns had a value of approximately $59,000 to $173,000;[8] the trailer had a value of $4,500; and other assets awarded to Burns had zero value. She arrives at a value of approximately $64,000 to $178,000 for the property awarded to Burns. She then adds a 401(k) account, the Vanguard IRA, and the New York Life annuity, and subtracts her tolltag debt to arrive at an amount awarded to her of approximately $6,000. She argues that if anything, a disproportionate award should have been made in her favor because Burns's earning capacity is higher; she has had health problems; and Burns wrongfully converted $5,000 she contributed to the purchase of a horse trailer by selling the trailer to pay his attorney's fees. *See Murff*, 615 S.W.2d at 699.

Hinton concedes that the trial court may have considered the value of items she removed from the ranch in determining a just and right division. She concedes the trial court ordered her

---

[8] Hinton's value for the ranch is based in part on expert testimony that the trial court did not admit into evidence, sustaining Burns's objection that the expert's opinion had not been timely disclosed.

to return these items, and she contends she did return them, with the exception of the FEMA trailer. Burns, however, testified that Hinton returned only three of the items. He testified that the value of the items that were not returned was $46,766. Hinton argues that Burns's "bare conclusion of value" could not support a finding by the trial court of the value of the items, citing *Natural Gas Pipeline Co. of America v. Justiss*, 397 S.W.3d 150 (Tex. 2012). In *Justiss*, a nuisance case, the court held that although an owner of real property may testify to the value of his property, the owner must also "provide the factual basis on which his opinion rests." *Id.* at 159. Here, Burns provided an itemized list of approximately thirty items Hinton had not returned. Over $10,000 of the total was cash. The value of several other larger items, such as the FEMA trailer, a tractor, and two guns, was supported elsewhere in the record. Burns also points out that an owner of stolen property is competent to testify to the value of the property, citing *Morales v. State*, 2 S.W.3d 487, 488 (Tex. App.—Texarkana 1999, pet. ref'd). We conclude that Burns offered more than a "bare conclusion" of the value of the items Hinton removed from the ranch, which the trial court could consider in making its just and right division.

Burns argues that several of the assets awarded to him and assigned a zero value by Hinton actually have a negative value when the corresponding debt, also apportioned to him, is considered. He provides calculations showing that when the value of the items Hinton did not return is considered as well as the negative value of assets awarded to him, the trial court's division was approximately forty-four percent to Burns and fifty-six percent to Hinton. He also argues that Hinton failed to establish by clear and convincing evidence that the $5,000 she alleges he converted by the sale of the horse trailer was her separate property. Finally, he contends the trial court in making its just and right division could have considered the relatively short duration of the marriage (and the parties' two separations during that time period); his

contribution of his entire inheritance of over $275,000 to the community estate, compared with Hinton's contribution of $16,000; Hinton's removal and failure to return the trailer in which Burns was living as well as items of his personal property, despite the court's order to do so; and Hinton's failure to disclose at least one bank account and other conduct during the divorce proceedings. We conclude that there is some evidence of a substantive and probative character to support the trial court's division of property. *See Moroch*, 174 S.W.3d at 857 (discussing standard of review for trial court's division of property). We overrule Hinton's ninth and tenth issues.

## CONCLUSION

We modify the trial court's judgment to delete the imposition of the equitable lien on Hinton's homestead and separate property. As modified, we affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

121494F.P05

–21–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

VIRGINIA ROE HINTON F/K/A
VIRGINIA ROE BURNS, Appellant

No. 05-12-01494-CV      V.

DENIS LYONS BURNS, Appellee

On Appeal from the 366th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 366-51720-2012.
Opinion delivered by Justice Myers,
Justices Lang-Miers and Lewis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **MODIFIED** to delete the imposition of the equitable lien in the amount of $62,000 on all property owned by appellant Virginia Roe Hinton f/k/a Virginia Roe Burns. As modified, we **AFFIRM** the trial court's judgment.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 22nd day of May, 2014.

/Lana Myers/
LANA MYERS
JUSTICE