**AFFIRMED and Opinion Filed August 31, 2020**



In The
## Court of Appeals
## Fifth District of Texas at Dallas

No. 05-19-00133-CV

## IN THE INTEREST OF M.H. AND T.H., CHILDREN

**On Appeal from the 256th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-16-26862**

## MEMORANDUM OPINION
Before Chief Justice Burns, Pedersen, and Evans
Opinion by Chief Justice Burns[1]

Cristian Hinojosa appeals the trial court's property division in the final decree of divorce between Cristian and Sara Hinojosa. In three issues, Cristian argues he was entitled to confirmation of his separate real property and $20,000 in his Interactive Brokers Account, he was entitled to reimbursement to his separate property for the payment of a community debt, and the trial court abused its discretion in awarding a disproportionate value of the community estate. We affirm the trial court's judgment.

---

[1] The Honorable David Bridges, Justice, participated in the submission of this case; however, he did not participate in the issuance of this opinion due to his death on July 25, 2020. Chief Justice Burns has reviewed the record and the briefs in this cause.

Cristian and Sara were married in January 2013. During the marriage, they had two children, M.H. and T.H. In December 2016, Cristian filed his original petition for divorce. Cristian's second amended petition for divorce, the live pleading, alleged the marriage had become insupportable because of discord or conflict of personalities that destroyed the legitimate ends of the marriage relationship. Without specifying the property at issue, Cristian stated he owned "certain separate property that is not part of the community estate" and requested that the trial court confirm that property as separate property. Cristian also requested reimbursement of his separate estate for funds or assets expended by his separate estate for the benefit of the community estate. Again, Cristian did not specify the amount of funds expended or the purpose of their expenditure. Among other things, Cristian requested he be awarded exclusive use and possession of the residence on Southwestern Boulevard and "bank accounts held exclusively" in his name.

Sara's second amended counterpetition for divorce, filed in May 2018, alleged the marriage had become insupportable but further alleged Cristian was "guilty of cruel treatment toward" Sara and had "committed adultery." Sara requested that she be appointed sole managing conservator of the children and that Cristian be "required to monitor his sobriety through the use of Soberlink and ordered to submit to alcohol testing at a set time before, during, and immediately following his possession periods of the children and all breathalyzer tests should be immediately forwarded to" Sara.

The counterpetition anticipated that the parties would enter into a written agreement for the division of the community property marital estate. However, absent such an agreement, Sara requested a disproportionate share of the parties' estate for the following reasons: the fault of Cristian in the breakup of the marriage, including the cruel treatment of Sara; adultery; the benefits Sara may have derived from the continuation of the marriage; anticipation that Sara would be appointed the conservator with the exclusive right to designate the primary residence of the children; the tax and other business consequences of the property division; reimbursement; actual and constructive fraud committed by Cristian; and attorney's fees to be paid. The counterpetition separately addressed Cristian's alleged fraud on the community and requested that the court reconstitute the community estate to its full value prior to Cristian's "depletion of the community estate by his fraudulent acts and divide the reconstituted community estate" including awarding Sara "an appropriate share of the community estate, a money judgment, or both."

At trial in May 2018, Cristian testified that the value of his pension plan when he married Sara was $28,679. Before the marriage, Cristian owned a condominium on Holland Avenue and a house on Lake Gardens. When Sara and Cristian found a home on Moss Farms that they wanted to buy, they had money for a down payment on the home but did not have money to remodel the home until they sold the Lake Gardens property. Cristian testified that, when Lake Gardens sold, the money was his separate property. Cristian testified that, "At that point the equity was

$171,708"as shown on petitioner's exhibit 12, a 2013 "Substitute Form 1098" also labeled as a "Mortgage Interest Statement." Cristian testified petitioner's exhibit 19 showed "the net proceeds of Lake Gardens was deposited into [his] account." Petitioner's exhibit 19 is a Bank of America account summary in the name of Cristian Hinojosa and Sara Hinojosa and covers the period March 11, 2016 to April 8, 2016. The exhibit showed a beginning balance of $7,654.83, deposits and other additions of $192,593.52, withdrawals and other subtractions of "-46,053.29," checks of "-57,155.50," and an ending balance of $97,037.06. Cristian testified he used some of the money to pay off a loan from his father and some to "pay off the interest," and he invested $55,000 of the money in Moss Farms. Cristian also introduced an exhibit (4) listing items he asked the court to confirm as his separate property.

On cross examination, Cristian testified he was "seeking a $131,000.00 reimbursement claim on the house." When asked what documents he had to show the value of the house immediately before he started making improvements, Cristian testified he had "the 1098 statement from 2013 at the year of the marriage." Cristian testified he started making improvements on the Moss Farm residence "From day one" when "We purchased Moss Farm in the fall of 2015." When asked if he had any "documents that reflect the value of these improvements contributed to the house, to the value of the house," Cristian testified he had "Three different appraisals, price the improvements gave a fair market value of the property post

improvement." When asked if there was "nothing that differentiates any value that the improvements added, if any, versus the value of simply market appreciation," Cristian answered, "the appraised value was based on market and the improvements is based on the condition, desirability, and utility rating." When asked again if he had "anything to differentiate between the value contributed by the improvement and the value attributable to market forces," Cristian answered, "They're in Sara's possession." Cristian testified he was asking the court to adopt his parenting plan and his property division and confirm his separate property.

Sara testified that, in May 2016, she was two days away from a C-section scheduled to deliver her second child when Cristian went out and she did not hear from him by 11:30 p.m. Sara "knew he was probably out drinking." Sara testified Cristian responded to her texts "about 2:00 in the morning, something like, I'm sorry my phone was off. I've been drinking. I'm not coming home." Cristian "came back late the next day." The birth of Sara's second child was "fine," but afterwards in the delivery room Cristian started "picking a fight" and "verbally abusing" Sara, and he told Sara "he wanted a divorce." After the baby came home, Cristian "went into a several week spiral" of drinking, "becoming more and more depressed," and "crying a lot." Cristian told Sara "over and over again" that he had "demons inside" him and "a devil in" him and asked her to call a priest. Sara testified Cristian "was afraid he was going to hurt himself and he wanted [Sara] to get the guns out of the house."

Sara took Cristian to "detox" at Presbyterian Hospital where he stayed approximately four days before telling Sara over the phone that she was "trying to lock him up." Sara went to the hospital to visit Cristian who was there with "two of his AA friends" and "had already checked himself out of detox against medical advice." Sara did not want Cristian to come home, and she was "really worried about his state of mind."

Nevertheless, Cristian came home and "was upset that [Sara] wasn't happy for him to be home." Sara's sister was playing with Sara's oldest child at the neighbor's house, and Sara was nursing the baby when Cristian tried to "pick a fight" and argue about the marriage. Sara went into another room and, when Cristian followed, Sara tried to go out the front door. Cristian blocked the front door, told Sara she could not leave, and "started yelling" profanities and grabbed Sara's phone. Sara got out the back door, but "the whole time Cristian [was] right there in [Sara's] face, yelling at [her]." Two days later, Cristian's father drove him to a treatment center, La Hacienda, where Cristian stayed for twenty-two days.

In June, Sara and her sister and the children drove six hours to La Hacienda so Cristian could see his children for Father's Day. Cristian was "upset" Sara was not "more affectionate with him," "mad" that Sara was thirty minutes late, and "upset that [Sara] didn't bring the father's day card." When Sara and Cristian discussed where Cristian was going to stay when he got out of La Hacienda, Sara said she "needed some time" and Cristian could "stay at his dad's house a couple of days and

then come to our house." When Cristian got out of La Hacienda, he "came to the house and he said, I'm coming to the house. You can't stop me." Cristian "ended up staying at his father's but the next day [Sara] had to have his therapist intervene." After Cristian spent two days at his father's house, for the next month "it was good." Cristian was "going to meetings all the time" and "talking to his [AA] sponsor." However, things "started to deteriorate after a few weeks" when Cristian stopped going to meetings, meeting with his sponsor, and seeing his counselor. Sara testified this series of events lasted into August, and she and Cristian separated at the end of October.

In November, Cristian again went to "detox at Presby" and then to treatment at another facility. In "email discussions and phone calls," Cristian "was begging [Sara] not to get a divorce." Sara testified she still wanted to stay married, and she thought that the marriage could be repaired if Cristian was getting "treatment for the alcoholism," depression, and PTSD. Five days after getting out of treatment, Cristian filed for divorce.

Cristian's father, Santiago Hinojosa, testified he was aware Cristian "has had a problem with alcoholism." Santiago testified that, while the Lake Gardens property was for sale and "they were doing some remodeling at the new house on Moss Farm," Cristian asked Santiago "if we would help them out with a bridge loan and when the Lake Gardens house sold he would pay us back." Santiago identified petitioner's exhibit 23 as a copy of a promissory note for $55,000 and petitioner's

exhibit 19 which contained a copy of a March 2016 check Cristian used to pay back $55,340.

Cynthia Hinojosa, Cristian's mother, testified she received a text from him on November 5, 2016 saying "I'm having an affair. I need a little space." During that week, Cynthia received a call from a phone number she did not recognize, and the caller was Cristian, who said he was "in trouble" and "needed to talk." When Cynthia later called the number back, Kathleen Griffith answered the phone, and Cynthia began a series of text messages and phone calls with Griffith asking how Cristian was doing. Cynthia became "more and more concerned" about Cristian's condition, but she thought Cristian "was safe staying at Ms. Griffith's household." On Friday of that week, Griffith gave her address to Cynthia, and Cynthia went to get Cristian and take him to detox at "Presby." On Sunday, Cynthia met with Griffith to tell her "to stay away from the hospital as Sara was going to the hospital and we didn't want to traumatize Sara from what was happening." While Cristian was at a treatment facility, he gave Cynthia's husband keys and sent Cynthia a list of items Cristian wanted from his apartment. Cynthia used the keys to unlock Cristian's locked private journal, Cynthia took pictures of "things that were in the journal," and Cynthia "locked it back so [Cristian] would not know [she] had violated his privacy." Four months later, Cynthia told Sara that Cristian was having an affair with Griffith and disclosed Cristian's "most personal writings" to Sara.

At the conclusion of trial, the trial court found the testimony supported the relief requested and granted divorce to the parties. The trial court further stated there might be "additional rulings by virtue of emails or fax depending on what the Court does."

On September 12, 2018, the trial court issued a memorandum ruling containing, among other things, the following "Property findings":

> The Court will deny reimbursement to the husband for $130,000 in alleged improvements. The Court will find $13,823.72 to wife as separate property for emotional distress damages. The Court does find $38,702 in Interactive Brokers to be Husband's separate.

On November 6, 2018, the trial court entered a final decree of divorce awarding, as relevant here, the Interactive Brokers individual trading account to Cristian, after payment of $9000 to Sara as recovery on a waste claim against Cristian, and the Moss Farm property to Sara. The decree denied Cristian's claim of $130,000 for alleged improvements to the marital residence awarded to Sara. The decree confirmed $38,702 on deposit in the Interactive Brokers individual trading account as Cristian's separate property.

Cristian filed a motion for new trial complaining of the trial court's denial of his separate property claims of (1) $105,000 in the Interactive Brokers account "because the funds originated from Husband's separate property house, and (2) $130,000 for the down payment on the marital residence, the Moss Farm property, "because the funds originated from Husband's separate property house and a gift

–9–

from Husband's father."  Attached to the motion were settlement statements from the sale of Cristian's "SP home" and the purchase of the Moss Farm property purportedly showing "the down payment using the sale proceeds."

Sara filed a response to the motion for new trial in which she argued the record supported denying Cristian's separate property claim of $105,000 in the Interactive Brokers account because Cristian failed to meet his burden tracing any separate property claim to the Interactive Brokers account by clear and convincing evidence. The response argued Cristian attached no proof or evidence to support his claim and merely made a conclusory statement that it was his separate property.  As for Cristian's separate property claim of $130,000, the response argued Cristian failed to meet his burden tracing any separate property claim for the $130,000.  The response argued the evidence Cristian attached to his motion disproved his claim. On the settlement statement which Cristian claimed reflected the sale of his separate property house, both Cristian and Sara were listed as sellers.  The response argued further that Cristian's claim that he made a $130,000 separate property down payment on the purchase of the Moss Farm property was directly controverted by the settlement statement associated with the sale.  The response argued Cristian presented no evidence as to the source of any funds or tracing of funds and failed "to meet his clear and convincing evidence burden to prove his separate property."  In addition, the response asserted, the settlement statement listed both Sara and Cristian

as the purchasers of the Moss Farms property and reflected a down payment of $75,965, not $130,000.

In January 2019, the trial court entered findings of fact and conclusions of law. The court found, among other things, that Cristian is "an alcoholic who has relapsed multiple times during the parties [sic] marriage," Cristian "committed adultery during the marriage," and Cristian's "testimony was not credible." In finding that, as part of a just and right divisions of the parties' estate, Sara should be awarded a disproportionate share of the community estate, the trial court listed the following reasons to support its finding:

> fault in the breakup of the marriage by Cristian Hinojosa; adultery committed by Cristian Hinojosa; Cristian Hinojosa's alcoholism; waste committed by Cristian Hinojosa; Sara Hinojosa having primary custody of the children; size of the parties' respective separate estates; benefits Sara Hinojosa would have received if the marriage continued; the nature of the property involved; the attorney fees and costs involved in litigating the divorce; fraud on the community estate by Cristian Hinojosa; tax consequences of the property division.

The trial court found the value of the Moss Farms home was $156,845.19 and awarded the home to Sara. The trial court found the value of the community property portion of the Interactive Broker individual trading account was $85,622 and awarded the entire amount to Cristian.

The trial court denied Cristian's request for $130,000 in reimbursement for "alleged improvements" made to the Moss Farm home and found (1) Cristian failed to prove by clear and convincing evidence the underlying funds were his separate

property; (2) Cristian failed to "prove the enhanced value attributable to any alleged improvements"; and (3) assuming Cristian "had proven the above," the court found it would not have been equitable to award Cristian "this claim." The trial court found the value of the separate property portion of the Interactive Broker individual trading account was $38,702 and awarded the entire amount to Cristian. This appeal followed.

In his first issue, Cristian argues he was entitled to confirmation of his separate real property and $20,000 in his Interactive Brokers account. Specifically, Cristian argues "the trial court abused its discretion in failing to confirm [his] separate property Moss Farm home." In his second issue, Cristian argues he was "entitled to reimbursement to his separate property for the payment of a community debt." The alleged separate property referred to in Cristian's second issue is actually the "$20,000 in his Interactive Brokers account" referenced in his first issue. Because of the interrelated nature of these two issues, we address them together.

Trial courts must "order a division of the parties' estate in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE ANN. § 7.001. Numerous factors are considered in making the division, including the disparity of incomes or earning capacities of the parties, "benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, disparity of ages,

–12–

size of separate estates, and the nature of the property." *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981). Broad discretion governs division of the community estate, and all reasonable presumptions are indulged in favor of such discretion. *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998); *Murff*, 615 S.W.2d at 698–99 (appellate court presumes trial court properly exercised discretion in dividing marital estate). The party complaining about the property division must demonstrate from the evidence that "the division was so unjust and unfair as to constitute an abuse of discretion." *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d 373, 384 (Tex. App.— Dallas 2013, no pet.).

A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *Hinton v. Burns*, 433 S.W.3d 189, 193 (Tex. App.—Dallas 2014, no pet.) (citing *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied)). In family law cases, the abuse of discretion standard of review overlaps with the traditional sufficiency standards of review; as a result, legal and factual sufficiency are not independent grounds of reversible error, but instead constitute factors relevant to our assessment of whether the trial court abused its discretion. *Hinton*, 433 S.W.3d at 193; *Moroch*, 174 S.W.3d at 857; *see also In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.) (discussing standard). To determine whether the trial court abused its discretion, we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in its exercise of that discretion. *Hinton*,

433 S.W.3d at 193–94; *In re A.B.P.*, 291 S.W.3d at 95. The applicable sufficiency review comes into play with regard to the first question. *Hinton*, 433 S.W.3d at 194; *Moroch*, 174 S.W.3d at 857. We then proceed to determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Hinton*, 433 S.W.3d at 194; *Moroch*, 174 S.W.3d at 857.

Further, when the burden of proof at trial is by clear and convincing evidence, as it is for a party seeking to rebut the presumption that a specified item of property is community property, we apply a higher standard of legal and factual sufficiency review. *Hinton*, 433 S.W.3d at 194; *Moroch*, 174 S.W.3d at 857. Clear and convincing evidence is defined as that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014). This intermediate standard falls between the preponderance standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *Hinton*, 433 S.W.3d at 194; *Moroch*, 174 S.W.3d at 857. The proof must weigh more heavily than the greater weight of the credible evidence, but the evidence need not be undisputed. *Hinton*, 433 S.W.3d at 194; *Moroch*, 174 S.W.3d at 857–58.

In reviewing the evidence for legal sufficiency, we look at all the evidence in the light most favorable to the judgment to determine if the trier of fact could reasonably have formed a firm belief or conviction that its finding was true. *Hinton*, 433 S.W.3d at 194; *Moroch*, 174 S.W.3d at 858. We must assume that the fact finder

–14–

resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *Hinton*, 433 S.W.3d at 194; *Moroch*, 174 S.W.3d at 858. In reviewing the evidence for factual sufficiency, we must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing and then determine whether, based on the entire record, a fact finder could reasonably form a firm conviction or belief that the allegations in the petition were proven. *Hinton*, 433 S.W.3d at 194; *Moroch*, 174 S.W.3d at 858.

All property possessed by either spouse at the time of the dissolution of the marriage is presumed to be community property. TEX. FAM. CODE ANN. § 3.003(a). A party claiming property as his separate property has the burden to rebut the presumption of community property. *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011) (per curiam). To do so, the party must trace and clearly identify the property in question as separate by clear and convincing evidence. *Id.*; *see also* TEX. FAM. CODE ANN. § 3.003(b).

A spouse is competent to testify concerning the characterization of property without producing independent documentation such as bank records. *Pace v. Pace*, 160 S.W.3d 706, 714 (Tex. App.—Dallas 2005, pet. denied); *see Vannerson v. Vannerson*, 857 S.W.2d 659, 668 (Tex. App.—Houston [1st Dist.] 1993, writ denied). The testimony of a spouse seeking to overcome the community property presumption need not be corroborated to meet the clear and convincing standard. *Pace*, 160 S.W.3d at 714; *Holloway v. Holloway*, 671 S.W.2d 51, 56 (Tex. App.—

–15–

Dallas 1983, writ dism'd); *Newland v. Newland*, 529 S.W.2d 105, 107–08 (Tex. Civ. App.—Fort Worth 1975, no writ); *but see Boyd v. Boyd*, 131 S.W.3d 605, 614–17 (Tex. App.—Fort Worth 2004, no pet. h.). However, a party's unsupported and contradicted testimony may not meet the clear and convincing standard. *Pace*, 160 S.W.3d at 714; *see Johnson v. Johnson*, 804 S.W.2d 296, 300–01 (Tex. App.—Houston [1st Dist] 1991, no writ). Stated another way, mere testimony that property was purchased with separate property funds, without tracing the funds, is generally insufficient to rebut the community property presumption. *Sink v. Sink*, 364 S.W.3d 340, 345 (Tex. App.—Dallas 2012, no pet.); *Chavez v. Chavez*, 269 S.W.3d 763, 767 (Tex. App.—Dallas 2008, no pet.); *Boyd*, 131 S.W.3d at 612. Any doubt as to the character of property should be resolved in favor of the community estate. *Sink*, 364 at 345; *Chavez*, 269 S.W.3d at 767; *Moroch*, 174 S.W.3d at 856.

Cristian argues he proved with clear and convincing evidence that the Holland Avenue and Lake Gardens properties were his separate property. Next, Cristian argues he proved "he sold Holland in 2015 and used the proceeds to purchase Moss Farms during the marriage. In making this argument, Cristian relies on "a HUD Settlement Statement, Bank of America statement for account ending in 0522 in which the funds were deposited, and a Bank of America statement for account ending in 0522 in which the funds were removed."

The HUD settlement statement, petitioner's exhibit 18, does show the property's location is on Holland Avenue and cash paid to seller in the amount of

–16–

$75,084.14. The box on the statement that identifies "Name & Address of Seller" lists both Cristian and Sara at the Lake Gardens address, and the statement is signed by both Cristian and Sara. The Bank of America statement showing a deposit of $75,084.14, petitioner's exhibit 13, pertains to a joint bank account in both Cristian's and Sara's names and lists the Lake Gardens address. The statement also reflects a beginning balance of $13,878.55 on August 11, 2015 and deposits in excess of $5500 from Sara's employer. The Bank of America statement showing the removal of a check for $74,033.93 and $1923, petitioner's exhibit 14, also shows it is a joint account in the names of both Cristian and Sara and reflects deposits from Sara's employer in excess of $5000. Copies of the checks, petitioner's exhibit 15, show they are cashier's checks that identify Cristian as "Remitter (Purchased by" and are payable to "CAPITAL TITLE." The HUD settlement statement for the purchase of the Moss Farm property, petitioner's exhibit 16, shows $75,956.93 cash from borrower and identifies borrower as Cristian and Sara. Cristian argues that, in light of this evidence, the trial court erred in mischaracterizing the Moss Farm property as community property. We disagree.

The record is clear the Moss Farm home was purchased during Cristian and Sara's marriage. Cristian's first amended inventory and appraisement identified the Moss Farm home as community property. Cristian's proposed property division spreadsheet, petitioner's exhibit 4, showed the Moss Farm home going to Sara. Cristian's testimony at trial was that he sought a "$131,000 reimbursement claim on

–17–

the house," and Cristian did not argue that the Moss Farm home should be characterized as his separate property. To the extent Cristian detailed the deposit of funds from the sale of the Lake Gardens property and the purchase of the Moss Farm home using funds from the parties' joint checking account, the record shows that Sara was listed as seller on the documents relating to the sale of the Lake Gardens property and listed as borrower on the Moss Farm purchase documents. Further, Sara's name is on the joint checking account, and the records show her salary was direct-deposited into the account.

When separate and community property are commingled in a single bank account, we presume the community funds are drawn out first, before separate funds are withdrawn. *Hinton*, 433 S.W.3d at 197 (citing *Zagorski v. Zagorski*, 116 S.W.3d 309, 319–20 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)). Cristian ignores the fact that the Bank of America records show, among other things, Sara's salary direct-deposits and a $20,560 tax refund. Under these circumstances, the trial court did not abuse its discretion in determining Cristian failed to prove by clear and convincing evidence the underlying funds were his separate property. *See Hinton*, 433 S.W.3d at 193; *Moroch*, 174 S.W.3d at 857; *Sink*, 364 at 345.

Apparently in an effort to reach the total of $130,000 for the reimbursement claim raised at trial, in addition to his claim regarding the $75,956.93 paid for the Moss Farm home, Cristian complains that a $55,000 bridge loan from his father was paid off with Cristian's separate property. The $55,000 promissory note is dated

–18–

January 3, 2016 and identifies the "Borrower" as "Cristian and Sara Hinojosa" and the "Lender" as "Santiago and Cecilia Hinojosa." The note anticipated the Lake Gardens property would be relisted on or around January 21, 2016, and repayment of the note would occur upon closing. If closing was delayed beyond May 31, 2016, lender had the "right to call for repayment from borrower using sources other than equity from home sale." Finally, the note provided that "Borrower will be responsible for all costs of financing, including interest accrued on $55,000 line of credit usage during period of credit utilization with note." The check used to repay the note was drawn on Cristian and Sara's joint bank account. Thus, the bridge loan was made during the marriage in support of the purchase of the marital residence; Sara was obligated to repay the note along with Cristian, whether or not the Lake Gardens property sale closed; and the note was repaid out of Sara and Cristian's joint bank account. Again, we cannot conclude the trial court abused its discretion in determining Cristian failed to prove by clear and convincing evidence the underlying funds were his separate property. *See Hinton*, 433 S.W.3d at 193; *Moroch*, 174 S.W.3d at 857; *Sink*, 364 at 345.

As to Cristian's claim that he was entitled to confirmation of $20,000 in his Interactive Brokers account as separate property, Cristian argues, without more, that he "transferred from the Bank of America account containing the Lake Gardens sales proceeds into his Interactive Brokers Account in the amount of $20,000." The bank statement Cristian relies on in making this argument, petitioner's exhibit 19, shows

–19–

a $150,423.23 deposit from the sale of the Lake Gardens property. However, the statement also shows a $20,560 tax refund and more than $10,000 from Sara's employer commingled with the Lake Gardens sale money, and a closing balance of $192,593.52. *See Hinton*, 433 S.W.3d at 197. Cristian does not explain how, under these circumstances, merely withdrawing $20,000 entitled him to confirmation of that amount as his separate property. *See id.* Further, the trial court found the value of the separate property portion of the Interactive Broker individual trading account was $38,702 and awarded the entire amount to Cristian, in addition to all of the community interest in the Interactive Brokers account after the $9000 payment to Sara. We overrule Cristian's first and second issues.

In his third issue, Cristian complains the trial court abused its discretion in awarding a disproportionate value of the community estate to Sara. Cristian claims the trial court awarded Sara sixty-two percent and awarded Cristian thirty-eight percent. The evidence in this case established, and the trial court found, that Cristian committed adultery. Adultery does not have to occur pre-separation for it to be a ground for granting a divorce, and the trial court's finding of adultery can support the disproportionate division of the community property. *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d at 392. In addition, the trial court based its award to Sara of a disproportionate share of the community estate on Cristian's alcoholism, waste committed by Cristian, Sara having primary custody of the children, the nature of the property involved, and the attorney fees and costs involved in litigating the

divorce. The evidence showed the negative consequences of Cristian's alcoholism on the marriage and its role in the dissolution of the marriage. The court's other findings were similarly supported by the record. Under these circumstances, we conclude the trial court did not abuse its discretion in awarding Sara a disproportionate share of the community estate. *See Murff*, 615 S.W.2d at 698–99. We overrule Cristian's third issue.

We affirm the trial court's judgment.

/Robert D. Burns, III/
ROBERT D. BURNS, III
CHIEF JUSTICE

190133F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF M.H. AND
T.H., CHILDREN

No. 05-19-00133-CV

On Appeal from the 256th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DF-16-26862.
Opinion delivered by Chief Justice
Burns. Justices Pedersen, III and
Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Sara Hinojosa recover her costs of this appeal from appellant Cristian Hinojosa.

Judgment entered August 31, 2020.