Opinion issued August 30, 2016



In The

# Court of Appeals

For The

# First District of Texas

---

## NO. 01-14-00106-CV

---

**HENRY LEONARD MAHER, Appellant**

**V.**

**CYNTHIA JUNE MAHER, Appellee**

---

On Appeal from the 433rd District Court
Comal County, Texas[1]
Trial Court Case No. C2011-0263D

---

## MEMORANDUM OPINION

---

[1] Pursuant to its docket equalization authority, the Supreme Court of Texas transferred the appeal to this court. *See* Misc. Docket No. 14-0001 (Tex. Jan. 7, 2014); *see also* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2013) (authorizing transfer of cases).

Appellant, Henry Leonard Maher, challenges the trial court's final decree in the suit for divorce brought against him by appellee, Cynthia June Maher. Following a trial to the court, the trial court divorced the parties and divided the marital estate. In five issues, Henry contends that the trial court erred in mischaracterizing and valuing certain assets of the marital estate, finding in favor of Cynthia on her reimbursement claim, not awarding him a disproportionate share of the marital estate, and denying him due process of law.

We affirm.

## Background

In her amended petition, Cynthia sought a divorce from Henry, alleging that their marriage had "become insupportable because of discord or conflict of personalities." She, should an agreement between herself and Henry not be reached, requested division of the community property; confirmation of her separate property and estate; reimbursement for "funds or assets expended by [her] separate estate"; and attorney's fees. In his amended counter-petition, Henry requested division of the community property, with him recovering "a disproportionate share of the [marital] estate"; confirmation of his separate property and estate; reimbursement for "funds or assets expended by [his] separate estate"; and attorney's fees.

At trial, Cynthia testified that she and Henry married in 1984 and have one son, who is over the age of eighteen. The Mahers separated in August 2010, and

Cynthia sought divorce on the ground of insupportability, i.e., the marriage had "become insupportable due to discord or conflict that destroy[ed] the legitimate ends of the marriage" and there was "[n]o" chance of reconciliation. Cynthia and Henry had been having "marital problems," they did not have "a close marital relationship," and their relationship had been "deteriorat[ing] . . . over the previous 12 years." They had "discussed divorce" prior to August 2010, "didn't speak very much," and "didn't seem to have a lot of activities in common." Additionally, she and Henry were unable to "find happiness" together, and his "[d]rinking" "threatened [their] relationship."

In 1995, Cynthia's parents began giving her, annually, monetary gifts, which started at $5,000 per year and increased over time. After her mother passed away in 2001, Cynthia also became a beneficiary of a bypass trust created by her mother and received disbursements from the trust in addition to the annual gifts from her parents. After her father passed away in 2007, Cynthia received "distributions from [his] estate." Cynthia explained that her parents, through the gifts, trust disbursements, and estate distributions, had given her $1,227,300.94, which constituted her separate property. She also noted that her parents had given Henry, periodically, monetary gifts totaling $68,000, which constituted his separate property.[2]

---

[2] At trial, Henry did not contest that the value of his separate property was $68,000.

When the Mahers moved to Texas in 2004, their community-property funds totaled $1,380,052.18.[3] They decided to build a house and purchased five acres of land from Cynthia's father for $35,000, which they paid from their joint bank account. However, Cynthia had previously transferred money into the joint account from her separate bank account and "trust gifts." Initially, the Mahers built on the purchased land "a toolshed . . . for storing equipment" and a garage with "an apartment or a bonus room." Their budget for the house was originally $800,000, and the project began in 2006, with Henry in charge of the construction.

The Mahers subsequently purchased approximately twenty-two more acres of land, using both community-property funds and Cynthia's separate-property funds. They then sold a portion of the twenty-two acres to a developer, leaving them with approximately thirteen and one-half acres of land in total. Cynthia explained that she and Henry had, in all, acquired three tracts of land (collectively, "the property"): the first five acres, upon which they built their house; the second, eight and one-half acres, which remained undeveloped; and the third, a "land buffer."[4]

---

[3]  Cynthia testified that they had completely expended their community-property funds by May 2007.

[4]  In its final divorce decree and in its Findings of Fact and Conclusions of Law, the trial court identifies the three tracts of land as follows: (a) "D J, Lot 4, Acres 5.167, located in Comal County, Texas[,] more commonly referred to as 870 Bluff Ridge Court, New Braunfels, Texas 78132"; (b) "D J, Lot 5A, Acres 8.85, located in Comal County, Texas, more commonly referred to as 811 Bluff Ridge Court, New Braunfels, Texas 78132"; and (c) "River Place at Gruene 1, Lot 26 (landscape

4

According to Cynthia, she and Henry spent, in acquiring and developing the property, a total of $1,685,887.97, with $757,014.02 in community-property funds contributed, $57,442.62 in Henry's separate-property funds contributed, and $871,431.33 in Cynthia's separate-property funds contributed.[5]  On February 21, 2011, Hendricks Appraisal Services conducted an appraisal and valued the property at $850,000.  During Cynthia's testimony, the trial court, without objection, admitted into evidence a copy of the Hendricks appraisal.

Cynthia further testified that since she and Henry had separated, she had been taking care of the property and paying taxes and bills with her separate-property funds.  Accordingly, she sought reimbursement in the amount of $1,266,315.96 for "Enhancement in Value of [the Property]" and the following expenditures: "Payment of American Express Unsecured Liability"; "Payment of 2006 Real Estate Taxes"; "Payment of 2010 Real Estate Taxes"; "Payment of 2011 Real Estate Taxes"; "Accrued 2012 Real Estate Taxes"; "2009 Federal Income Taxes"; and "2010 Federal Income Taxes."

Cynthia also admitted that she, in February 2011, prior to filing for divorce, but after she and Henry had separated, began having a "relationship" with another

---

buffer), located in Comal County, Texas, more commonly referred to as 428 Entre Rios Blvd., New Braunfels, Texas 78132."

[5]     Cynthia testified that she used the "community out first method of tracing funds." *See Zagorski v. Zagorski*, 116 S.W.3d 309, 319–20 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

man. And she noted that she and Henry had "discussed" divorcing prior to the beginning of the relationship.

Henry testified that Cynthia had in fact expended her separate-property funds on acquiring and building the property. However, according to him, Cynthia only contributed $434,404 from her separate property. And he contributed $68,000 from his separate property. The community property contribution was "approximately" $1,250,000. Thus, he requested reimbursement of $68,000 for the use of his separate-property funds. Henry did not agree that the total value of Cynthia's separate property was approximately $1,200,000; instead, he "believe[d] she [had] received [from her parents] . . . approximately[] [$]890,000."[6]

Henry further opined that he was "entitled to a disproportionate share" of the marital estate because Cynthia had committed adultery. And he did not believe that she had waited to begin her relationship with another man until after they were "already getting divorced."

Patrick Goebel, a real estate appraiser, testified that Henry hired him to appraise the property. And Goebel opined that the value of the property on April 23, 2012 was $1,200,000. During his testimony, the trial court, without objection, admitted into evidence a copy of the Goebel appraisal.

---

[6] Henry did not offer any evidence supporting his calculation of the value of Cynthia's separate property.

In its final divorce decree, the trial court ordered the parties divorced on the ground of insupportability. It awarded Henry certain household items and personal effects, the funds in various accounts, certain life insurance policies, and his motor vehicle. It awarded Cynthia the property, certain household items and personal effects, the funds in various accounts, certain life insurance policies, certain motor vehicles, and a judgment against Henry in the amount of $16,994.35.[7] And the trial court issued the following Findings of Fact and Conclusions of Law:

*Findings of Fact - Divorce*

. . . .

3.  The marriage of [Cynthia] and [Henry] has become insupportable because of discord or conflict of personalities that destroys the legitimate ends of the marital relationship and prevents any reasonable expectation of reconciliation.

*Findings of Fact - Division of the Marital Estate*

4.  During the marriage, [Cynthia] and [Henry] acquired the following property other than by gift or inheritance:

    a.  D J, Lot 4, Acres 5.167, located in Comal County, Texas[,] more commonly referred to as 870 Bluff Ridge Court, New Braunfels, Texas 78132.

    b.  D J, Lot 5A, Acres 8.85, located in Comal County, Texas, more commonly referred to as 811 Bluff Ridge Court, New Braunfels, Texas 78132.

---

[7] Other than the property, the trial court divided all remaining community assets according to an agreement between Cynthia and Henry. Henry does not appear to challenge the trial court's division of the remaining community assets.

7

c. River Place at Gruene 1, Lot 26 (landscape buffer), located in Comal County, Texas, more commonly referred to as 428 Entre Rios Blvd., New Braunfels, Texas 78132.

d. Household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, equipment, clothing, jewelry, vehicles, and other personal effects as identified on Exhibit "A" to the Final Decree of Divorce.

5. With the exception of the three pieces of real estate listed above under paragraph 4(a)(b)&(c), all remaining assets were divided between the parties by agreement as evidenced by Exhibit "A" to the Final Decree of Divorce.

. . . .

*Findings of Fact - Division of the Marital Estate - Reimbursement Claims*

7. CYNTHIA . . . was entitled to an equitable reimbursement claim in the amount of $813,988.71.

8. In order to effectuate a just and right division of the marital estate and in order to satisfy a portion of CYNTHIA['s] . . . above noted reimbursement claim, the real property identified hereinabove under paragraph 4(a)(b)&(c), being worth less than said reimbursement claim, was awarded to CYNTHIA . . . .

*Division of the Marital Estate - Factors Considered in Just and Right Division*

9. The Court took into consideration the following factors in making a determination of a just and right division:

a. The value of the community assets;

b. The contributions made by each party's separate estate for the payment of unsecured liabilities;

c. The value of the capital improvements made to community assets and paid for by a party's separate estate's contributions;

d. The assets being received by each party and the value thereof;

e. The amount of the reimbursement claim awarded to the separate Estate of Cynthia . . . ;

f. [Henry's] allegations that [Cynthia] had participated in an extramarital affair;

g. The spouses' abilities to support themselves;

h. The expenses paid by each party's separate estate to maintain community property while the case was pending;

i. The length of the marriage; and

j. The nature of the marital property.

*Other Findings of Fact*

10. In order to accomplish a just and right division of property and in order to satisfy a portion of CYNTHIA['s] . . . reimbursement claim, after considering the evidence presented at trial, the value of the property awarded to each party, the amount of each party's reimbursement claim, if any, a judgment in the amount of $16,994.35 was awarded to CYNTHIA . . . against HENRY . . . .

. . . .

*Conclusions of Law - Division of Marital Estate - Reimbursement*

5. The separate estate of CYNTHIA . . . has a valid reimbursement claim pursuant to section 3.401 of the Texas Family Code.

9

6.      As part of a just and right division of the assets and liabilities of the marriage, CYNTHIA . . . is awarded a claim for reimbursement in the amount of $813,988.71.

*Conclusions of Law – Other*

7.      As part of a just and right division of the assets and liabilit[ies] of the marriage, CYNTHIA . . . is awarded the real property described hereinabove under paragraph 4(a)(b)&(c).

8.      As part of a just and right division of the assets and liabilities of the marriage, CYNTHIA . . . is awarded a judgment against HENRY . . . in the amount of $16,994.35 . . . .

At Henry's request, the trial court issued the following Additional Findings of Fact and Conclusions of Law:

*Additional Findings of Fact*

. . . .

2.      In HENRY['s] . . . second and third requests for additional findings of fact, [he] requests that the court make certain findings regarding the Real Property described in paragraph 4(a)(b) and (c) of the court's original findings of fact and conclusions of law. . . .

   a.      that the real property identified under paragraph 4(a)(b)&(c) of the court's original findings of fact and conclusions of law had a value of $780,000.00.

   b.      that said real property was a community asset during the marriage.

3.      In HENRY['s] . . . fourth request for additional findings of fact, [he] requests that the court make additional findings regarding the reimbursement claim of CYNTHIA . . . .

a. that CYNTHIA . . . met her burden in proving that she had a valid and enforceable reimbursement claim[] pursuant to the Texas Family Code.

b. that CYNTHIA . . . presented credible evidence, both testimonial and documentary, to support her claim and that this court relied on said evidence in making its original findings.

c. that the court considered all of the legal and factual challenges submitted by HENRY . . . in making its original findings.

4. In HENRY['s] . . . fifth request for additional findings of fact, [he] request[s] that the court make additional findings regarding a just and right division of the marital estate. Pursuant to this request, the court submits the following additional findings of fact:

a. The court considered all of the evidence submitted at the time of trial in making a just and right division of the marital estate, including HENRY['s] . . . allegations of fault.

b. The court did not find that either party had wasted assets or committed fraud.

### Standard of Review

Most of the appealable issues in a family-law case, including property division incident to divorce, are evaluated for an abuse of discretion. *Reddick v. Reddick*, 450 S.W.3d 182, 187 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without any reference to guiding rules and principles. *Worford v. Stamper*, 801 S.W.2d 108, 109

11

(Tex. 1990). The trial court is afforded broad discretion in dividing the community estate, and we must indulge every reasonable presumption in favor of the trial court's proper exercise of its discretion. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981); *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d 373, 384 (Tex. App.—Dallas 2013, no pet.).

In family-law cases, legal- and factual-sufficiency challenges do not constitute independent grounds for asserting error, but are relevant factors in determining whether the trial court abused its discretion. *Moroch*, 174 S.W.3d at 857. To determine whether a trial court abused its discretion because the evidence is legally or factually insufficient to support its decision, we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in its application of that discretion. *Id.* We conduct the applicable sufficiency review when considering the first prong of the test. *Id.* We then determine whether, based on the evidence, the trial court made a reasonable decision. *Id.* Stated another way, the party challenging the trial court's characterization of property must first establish error by challenging the legal or factual sufficiency of the evidence to support the property's characterization and must then show that because of the mischaracterization, the trial court abused its discretion. *See Viera v. Viera*, 331 S.W.3d 195, 207 (Tex. App.—El Paso 2011, no pet.). A trial court does

not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *Moroch*, 174 S.W.3d at 857.

## Motion to Strike

As an initial matter, we address Cynthia's "Motion to Strike [Henry's] Supplemental Appendices and Any Reference to those Supplemental Appendices in [His] Brief," in which she argues that certain documents "attached to [Henry's] brief as supplemental appendices . . . are not a part of the formal appellate record" and cannot be considered by the Court. The attachment of documents as exhibits or appendices to briefs does not constitute formal inclusion of such documents in the record for appeal, and we cannot consider matters outside of the record in our review. *Robb v. Horizon Cmtys. Improvement Ass'n*, 417 S.W.3d 585, 589 (Tex. App.—El Paso 2013, no pet.); *Becon Mgmt. & Gen. Contracting, Inc. v. Boyer, Inc.*, 178 S.W.3d 198, 210–11 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Accordingly, we grant Cynthia's motion to the extent that she requests that we not consider matters outside of the appellate record and strike the portions of Henry's appendices containing such matters as well as any references to matters outside of the record that are contained in Henry's briefs. *See Crossley v. Staley*, 988 S.W.2d 791, 794 (Tex. App.—Amarillo 1999, no pet.) (granting motion to strike documents outside of record contained in appendix to brief and references in brief to such documents); *Siefkas v. Siefkas*, 902 S.W.2d 72, 74 (Tex. App.—El Paso

13

1995, no writ) ("Material outside the record that is improperly included in or attached to a party's brief may be stricken.").

**Mischaracterization**

In his first issue, Henry argues that the trial court erred in "mischaracterizing the assets of the marital estate" because "disputed evidence was presented" and Cynthia "failed to provide legally and factually sufficient evidence to prove, by clear and convincing evidence, the separate character of the property she claimed, and did not rebut the community presumption."

Community property consists of all property, other than separate property, acquired by either spouse during the marriage. TEX. FAM. CODE ANN. § 3.002 (Vernon 2006). Property possessed by either spouse during or on dissolution of marriage is presumed to be community property. *Id.* § 3.003(a) (Vernon 2006).

Separate property includes "property owned or claimed by the spouse before marriage" and "property acquired by the spouse during marriage by gift, devise, or descent." *Id.* § 3.001 (Vernon 2006); *see also* TEX. CONST. art. XVI, § 15. The characterization of property as "separate" or "community" is determined by its character at inception. *Leax v. Leax*, 305 S.W.3d 22, 33 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *McClary v. Thompson*, 65 S.W.3d 829, 834 (Tex. App.—Fort Worth 2002, pet. denied). Inception of title is the time at which a party first has

14

a right of claim to the property by virtue of which title is finally vested. *Smith v. Smith*, 22 S.W.3d 140, 145 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

To overcome the community-property presumption, a party claiming marital property as separate property must prove the claim with clear and convincing evidence. TEX. FAM. CODE ANN. § 3.003(b). "Clear and convincing evidence" is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (Vernon 2014) (internal quotations omitted); *see Garza v. Garza*, 217 S.W.3d 538, 548 (Tex. App.—San Antonio 2006, no pet.).

In general, mere testimony that property is separate property, without any tracing, is insufficient to rebut the community presumption. *Zagorski v. Zagorski*, 116 S.W.3d 309, 316 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property. *Smith*, 22 S.W.3d at 144. When an asset is purchased during marriage with funds traceable solely to a spouse's separate estate, the asset may be appropriately characterized as separate property. *Phillips v. Phillips*, 296 S.W.3d 656, 674 (Tex. App.—El Paso 2009, pet. denied).

At trial, Cynthia testified that the value of her separate property, comprised of annual monetary gifts from her parents, "distributions from [her] mother's bypass

trust," and "distributions from [her] father's estate," was $1,227,300.94. Her parents began giving her "monetary annual gifts" in 1995, stating at $5000 and increasing over time. When her mother passed away in 2001, Cynthia became a beneficiary of a bypass trust created by her mother and then received disbursements from the trust. And after her father passed away in 2007, Cynthia received distributions from his estate. According to Cynthia, "[a]ll of [her] separate property" came "solely from [her] mom and dad." Typically, she placed the money that she received from her parents in her separate bank account, although it occasionally ended up in her and Henry's joint bank account.

During Cynthia's testimony, the trial court admitted into evidence a tracing spreadsheet, Petitioner's Exhibit 6, which shows the date and the amount of each monetary gift, trust disbursement, or estate distribution that Cynthia received during the marriage. The spreadsheet also shows the account or entity into which the money was deposited or distributed.[8] Cynthia explained that she created the spreadsheet by using "bank statements," "canceled checks," "deposits," and "a reconciliation and gift tax returns from [her] parent[s'] trust returns from the estate executor."

---

[8] Petitioner's Exhibit 6 also shows the dates and amounts of the monetary gifts that Henry received from Cynthia's parents during his and Cynthia's marriage—amounts, which Henry did not challenge at trial, and gifts, which he claims are his separate property.

As previously noted, a spouse's separate property consists of the property acquired during marriage by gift, devise, or descent. TEX. FAM. CODE ANN. § 3.001(2); *see also* TEX. CONST. art. XVI, § 15; *Benavides v. Mathis*, 433 S.W.3d 59, 61–62, 67 (Tex. App.—San Antonio 2014, pet. denied) (holding distributions from family trust husband's separate property); *Bush v. Bush*, 336 S.W.3d 722, 743 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("Property that is given as a gift . . . is separate property."); *Huval v. Huval*, No. 09-06-023 CV, 2007 WL 1793771, at *1 n.4 (Tex. App.—Beaumont June 21, 2007, no pet.) (mem. op.) ("[P]roperty acquired by inheritance is separate property.").

Accordingly, we hold that Cynthia has overcome the community-property presumption and established through clear and convincing evidence the value of her separate property in the amount of $1,227,300.94.

We overrule Henry's first issue.[9]

## Valuation of the Property

In his second issue, Henry argues that the trial court erred in valuing the property because it based its valuation determination on an "out of court appraisal" and "disregard[ed] the appraisal evidence [presented at trial] and the testimony of [his] expert witness."

---

[9] To the extent that Henry's argument about the trial court's purported "mischaracteriz[ation] [of] the assets of the marital estate" relates to Cynthia's reimbursement claim and his third issue, we address it below. *See infra*.

17

Cynthia testified that on February 21, 2011 Hendricks Appraisal Services conducted an appraisal of the property and valued the property at $850,000. And the trial court, without objection, admitted into evidence a copy of the Hendricks appraisal. Goebel testified that Henry hired him to appraise the property, and he opined that the value of the property on April 23, 2012 was $1,200,000. And the trial court, without objection, admitted into evidence a copy of the Goebel appraisal.

Following trial, but before entry of the trial court's final divorce decree, Ed Gray and Associates conducted a third appraisal (the "third appraisal") on June 14, 2013, and it valued the property at $780,000. The record does not reveal at whose behest the third appraisal was conducted. However, the trial court attached the third appraisal to its final divorce decree in which it awarded the property to Cynthia to satisfy a portion of her reimbursement claim. And the trial court, in its Additional Findings of Fact and Conclusions of Law, found that the property had "a value of $780,000.00."

Henry asserts that the trial court "abused its discretion in determining [the] value of the property" "based on [the] out of court appraisal," i.e., the third appraisal, and it "arbitrarily disregard[ed] the appraisal evidence [presented at trial] and the testimony of [his] expert witness."

Henry, however, does not provide this Court with any argument supporting his assertions. In his brief, he does not include any explanation as to how or why

18

the trial court's consideration of the third appraisal constituted an abuse of discretion or was otherwise improper. *See* TEX. R. APP. P. 38.1(i) (appellate brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *see also Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978) (explaining pro se litigants held to same standards as licensed attorneys and required to comply with applicable laws and rules of procedure); *Hopes-Fontenot v. Farmers New World Life Ins. Co.*, No. 01-12-00286-CV, 2013 WL 4399218, at *1 (Tex. App.—Houston [1st Dist.] Aug. 15, 2013, no pet.) (mem. op.) (pro se litigant must properly present his case). Henry also does not explain or support his assertion that the trial court "arbitrarily disregard[ed]" the appraisal evidence that he and Cynthia presented at trial. *See* TEX. R. APP. P. 38.1(i).

A party who fails to adequately brief a complaint waives his issue on appeal. *Washington. v. Bank of N.Y.*, 362 S.W.3d 853, 854–55 (Tex. App.—Dallas 2012, no pet.); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex. 1994). Simply put, bare assertions of error, like the ones found in Henry's brief, are not enough. *Washington*, 362 S.W.3d at 854; *see also Thompson v. HSBC Bank USA*, No. 01-14-00589-CV, 2015 WL 3981799, at *3 (Tex. App.—Houston [1st Dist.] June 30, 2015, no pet.) (mem. op.) (issue waived where appellants did not "present[] a cogent argument to support [their] issue"); *Sullivan v. Bickel & Brewer*,

943 S.W.2d 477, 486 (Tex. App.—Dallas 1995, writ denied) (appellant waived points not supported by argument and authority).

Further, we note that in a bench trial, a trial court may permit additional evidence to be offered "at any time" when "necessary to the due administration of justice." TEX. R. CIV. P. 270; *Moore v. Jet Stream Invs., Ltd.*, 315 S.W.3d 195, 201 (Tex. App.—Texarkana 2010, pet. denied). The decision to reopen the evidence is within the sound discretion of the trial court and will not be overturned on appeal, absent an abuse of discretion. *Universal Health Sys., Inc. v. Thompson*, 24 S.W.3d 570, 580 (Tex. App.—Austin 2000, no pet.). Notably, trial courts are implored to exercise their discretion liberally in the interest of justice, so that all parties are permitted to fully develop their case. *In re Hawk*, 5 S.W.3d 874, 876–77 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Word of Faith World Outreach Ctr. Church, Inc. v. Oechsner*, 669 S.W.2d 364, 366–67 (Tex. App.—Dallas 1984, no writ). In determining whether to permit additional evidence, a court should consider whether: (1) the moving party showed due diligence in obtaining evidence; (2) the proffered evidence is decisive; (3) the reception of such evidence will cause undue delay; and (4) granting the motion to reopen evidence will cause injustice. *Poag v. Flories*, 317 S.W.3d 820, 828 (Tex. App.—Fort Worth 2010, pet. denied); *In re Hawk*, 5 S.W.3d at 877.

Although the record does not reveal the circumstances surrounding the procurement of the third appraisal, it appears from the parties' briefing that the trial court may have sua sponte ordered the third appraisal, prior to its entry of the final divorce decree. Rule 270 does not require a motion by a party to reopen evidence; a trial court may do so on its own. *See Holden v. Holden*, 456 S.W.3d 642, 649–50 (Tex. App.—Tyler 2015, no pet.) (nothing "prevent[s] a trial court from reopening the evidence sua sponte"); *Brazell v. Brazell*, No. 04-13-00491-CV, 2014 WL 1871361, at *1–4 (Tex. App.—San Antonio May 7, 2014, pet. denied) (mem. op.) (after holding hearing in divorce proceeding, "trial court recalled the parties and requested additional evidence," which it then considered).

Here, the additional evidence, i.e., the third appraisal, was decisive and did not result in any undue delay or injustice; thus, the trial court did not abuse its discretion in considering it in determining the value of the property.[10] *See Naguib v. Naguib*, 137 S.W.3d 367, 372–73 (Tex. App.—Dallas 2004, pet. denied) (trial court has duty to grant motion to offer additional evidence where evidence decisive, no undue delay or injustice, and due diligence present); *see also Brazell*, 2014 WL 1871361, at *4 ("The additional evidence was decisive and did not cause injustice

---

[10]    In regard to the third appraisal, Henry does not assert a lack of due diligence or decisiveness, undue delay, or injustice. *See Poag v. Flories*, 317 S.W.3d 820, 828 (Tex. App.—Fort Worth 2010, pet. denied); *In re Hawk*, 5 S.W.3d 874, 877 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

21

because without it, the trial court could not have correctly calculated [wife's] interest in [husband's] monthly annuity payment.").

Further, to the extent that Henry complains that the trial court relied on the third appraisal, rather than either the Hendricks appraisal or the Goebel appraisal, we note that in a bench trial, the trial court, as the fact finder, determines the credibility of the witnesses and the weight of evidence and is tasked with resolving any conflicts and inconsistencies in the evidence. *See Sw. Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992, writ denied); *see also Bush*, 336 S.W.3d at 744 ("When there is conflicting evidence, it is the province of the trier of fact to resolve such conflicts."). And we will not disturb the trial court's resolution of evidentiary conflicts that turn on credibility determinations or the weight of the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *see also Haining v. Haining*, No. 01-08-00091-CV, 2010 WL 1240752, at *14 (Tex. App.—Houston [1st Dist.] Mar. 25, 2010, pet. denied) (mem. op.) ("We are not permitted to interfere with the factfinders's resolutions of conflicts in the evidence or to pass on the weight or credibility of a witness's testimony.").

The trial court heard testimony about two appraisals and had before it three appraisals, each of which valued the property differently. In matters involving factual disputes, a trial court does not abuse its discretion "if it bases its decision on conflicting evidence and some evidence supports its decision." *See Unifund CCR*

*Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *see also Fannin v. Fereday*, No. 01-13-00951-CV, 2015 WL 4463694, at *6 (Tex. App.—Houston [1st Dist.] July 21, 2015, no pet.) (mem. op.) ("The trial court could have reasonably chosen to believe [defendant's] evidence . . . and to disregard [plaintiff's] evidence."). Accordingly, we hold that the trial court did not err in reopening the evidence and relying on the third appraisal in determining the value of the property.

We overrule Henry's second issue.

### Reimbursement

In his third issue, Henry argues that the trial court erred in finding in favor of Cynthia on her reimbursement claim "in the amount of $813,988.71" because she failed to "adequately trace the property she claimed as her separate property," "provide legally and factually sufficient evidence to prove" "the identity of contributions to the community [estate]," and "provide legally and factually sufficient evidence to prove" "the enhancement in value of the marital real property improvements due to the contribution of her claimed separate property." And he asserts that the trial court "did not identify and value [certain] offsets to [Cynthia's] reimbursement claim."

Reimbursement is an equitable right that arises when the funds or assets of one estate are used to benefit and enhance another estate without itself receiving some benefit. *Barras v. Barras*, 396 S.W.3d 154, 173 (Tex. App.—Houston [14th

Dist.] 2013, pet. denied). Reimbursement claims are governed by Texas Family Code section 3.402 and can arise from a variety of expenditures or contributions. *See* TEX. FAM. CODE ANN. § 3.402(a) (Vernon Supp. 2015) (identifying nine categories of expenditures included within meaning of "a claim for reimbursement"); *Barras*, 396 S.W.3d at 173.

In a claim for reimbursement, the trial court determines the rights of the parties and applies equitable principles to decide whether to recognize the claim after considering the parties' relative circumstances and, in appropriate circumstances, order a division of the claim in a just and right manner. TEX. FAM. CODE ANN. § 7.007 (Vernon Supp. 2015); *Barras*, 396 S.W.3d at 173. Because a trial court resolves claims for reimbursement under equitable principles, such claims may be offset against each other where appropriate. TEX. FAM. CODE ANN. § 3.402(b); *Barras*, 396 S.W.3d at 173. The party claiming the right of reimbursement has the burden of pleading and proving that she made expenditures that are reimbursable. *Barras*, 396 S.W.3d at 174; *see also Roberts v. Roberts*, 402 S.W.3d 833, 838 (Tex. App.—San Antonio 2013, no pet.) ("A spouse seeking reimbursement must establish that the contribution was made by one marital estate to another, that the contribution was reimbursable, and the value of the contribution."). "A trial court's discretion in evaluating a claim for reimbursement is equally as broad as that discretion exercised by a trial court in making a just and right division of the community estate." *Barras*,

396 S.W.3d at 173–74.  In reviewing the trial court's actions, we presume that the trial court properly exercised its discretion.  *Roberts*, 402 S.W.3d at 838.

In regard to Henry's assertion that Cynthia "failed to adequately trace" her separate-property funds expended on community assets, we note that a spouse making a claim for reimbursement on behalf of a separate estate "must prove by clear and convincing evidence that the funds expended on behalf of the community estate were separate funds."  *Hinton v. Burns*, 433 S.W.3d 189, 196 (Tex. App.—Dallas 2014, no pet.).

The presumption that property possessed by either spouse on dissolution of the marriage is community is rebuttable and overcome by evidence that a specified item of property is the separate property of one spouse or the other.  *Id.*  Because the presumption is rebuttable, the general rule is that, to discharge the burden imposed by the statute, a spouse must trace and clearly identify property claimed as separate property.  *Id.*  The burden of tracing is a difficult, but not impossible, burden to sustain.  *Id.*  Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property.  *Id.*; *Smith*, 22 S.W.3d at 144.

Cynthia claimed reimbursement for contributions made with her separate-property funds to the community estate in the amount of $1,266,315.96.  The trial court, however, did not render judgment for her in this amount.  Instead, it

25

awarded her a total of $813,988.71 on her reimbursement claim. Therefore, to uphold the trial court's judgment, we must determine whether Cynthia proved by clear and convincing evidence that she contributed $813,988.71 from her separate-property funds to the community estate. *See Hinton*, 433 S.W.3d at 196.

We have already held that Cynthia met her burden of establishing the value of her separate property, which consisted of annual monetary gifts from her parents, disbursements from a bypass trust following her mother's death, and distributions from her father's estate, as $1,227,300.94.[11] The trial court admitted into evidence Cynthia's tracing spreadsheet, Petitioner's Exhibit 6, in which she clearly delineated all of the community's expenses, including $1,685,887.97 that was spent on the purchase and development of the property.[12] Cynthia testified that in preparing the spreadsheet, she applied the "community out first" rule. *See Zagorski*, 116 S.W.3d at 319–20 (under community-out-first rule, "we presume the community funds are drawn out first, before separate funds are withdrawn"). Using this method, the community property estate ran "out of money" on May 30, 2007. At that point,

---

[11]    We note that Henry admitted at trial that the value of Cynthia's separate property was "approximately" $890,000—an amount higher than that awarded by the trial court to Cynthia on her reimbursement claim. *See Salinas v. Salinas*, No. 13-10-00279-CV, 2011 WL 3846545, at *2 (Tex. App.—Corpus Christi Aug. 30, 2011, pet. denied) (mem. op.) (husband's admission wife received $50,000 from sale of her inherited property "abrogated the necessity of further proof").

[12]    Cynthia testified that the total cost of acquiring and developing the property was $1,685,887.97.

Cynthia then began allocating "expenses proportionately" between her and Henry, with each paying half of the community expenditures with their separate-property funds. Henry's "separate[-]property [funds] r[an] out [on] August 6, 2007, and at that point, . . . [her] separate property [began solely] pay[ing] for everything, house building, living expenses, extraordinary expenses, everything."

Cynthia further testified that she contributed "$871,000 of [her] own separate[-]property" funds to the purchase and development of the property.[13] Our own review of the tracing spreadsheet, Petitioner's Exhibit 6, shows that Cynthia contributed $875,061.64 of her separate-property funds to the purchase and development of property. In any event, the trial court awarded Cynthia $813,988.71—less than that testified to by Cynthia or revealed in Petitioner's Exhibit 6—finding that she was "entitled to an equitable reimbursement claim" in this amount. Cynthia's testimony, supported by Petitioner's Exhibit 6, is sufficient to establish by clear and convincing evidence that she, as found by the trial court, expended $813,988.71 from her separate-property funds on behalf of the community estate.

In regard to Cynthia's reimbursement claim of $296,236.54 for a "Payment of American Express Unsecured Liability," Henry asserts that she failed to identify

---

[13] Another spreadsheet, Petitioner's Exhibit 11, admitted into evidence at trial, shows that Cynthia contributed $871,431.33 of her separate-property funds to the purchase and development of the property.

the "unsecured liabilities" for which she requested reimbursement. In essence, he asserts that she failed to prove that the $296,236.54 "American Express" payment was a reimbursable expenditure. *See* TEX. FAM. CODE ANN. § 3.402(a) (identifying nine categories of reimbursable expenditures).

In addition to reimbursement for the $296,236.54 "Payment of American Express Unsecured Liability," Cynthia sought reimbursement for: (1) "Enhancement in Value of [the Property]" in the amount of $921,457.28; (2) "Payment of 2006 Real Estate Taxes" in the amount of $6,340.57; (3) "Payment of 2010 Real Estate Taxes" in the amount of $12,195.27; (4) "Payment of 2011 Real Estate Taxes" in the amount of $12,574.65; (5) "Accrued 2012 Real Estate Taxes" in the amount of $9,865.00; (6) "2009 Federal Income Taxes" in the amount of $3,721.65; and (7) "2010 Federal Income Taxes" in the amount of $3,925.00. In total, as noted previously, Cynthia sought reimbursement in the amount of $1,266,315.96.

Notably though, the trial court awarded Cynthia only $813,988.71 on her reimbursement claim—$452,327.25 less than she requested. Henry has not challenged any of the other above-listed reimbursement expenditures as non-reimbursable, and he has not asserted that Cynthia failed to meet her burden in regard to them. Together, the value of the other non-challenged expenditures is higher than the reimbursement amount that the trial court actually awarded to

28

Cynthia. Thus, we need not address whether Cynthia met her burden of establishing that the $296,236.54 "Payment of American Express Unsecured Liability" was a reimbursable expenditure. *See* Tex. R. App. P. 47.1; *McClenahan v. McClenahan*, No. 04-10-00114-CV, 2011 WL 1303253, at *3 (Tex. App.—San Antonio Apr. 6, 2011, no pet.) (mem. op.) (holding court need not decide whether credit-card claim reimbursable where appellant did not challenge validity of other reimbursement claims).

In regard to Henry's assertion that the trial court "failed to measure and value offsets to [Cynthia's] reimbursement claim," he specifically claims that any reimbursement to Cynthia should have been "offset" by "a S160 Bobcat, attachments and trailer, [and] two Wave Runners and trailer," which she "kept in [her] possession," "[p]ayments of K1 Trust and Estate Taxes . . . made by [her]," and "[p]ayment of legal expenses made by [her] relat[ed] to her issues with her siblings regarding the disposition of [her] father's estate."[14]

---

[14]   In another portion of his brief, Henry asserts that the trial court did not "account[] for the obvious offsets to [Cynthia's] reimbursement claim," including:

1.   Her "use and enjoyment of the real property and improvements";

2.   Henry's "time and physical labor contributed to the improvements";

3.   "Items that [Cynthia] has kept in her possession and retained as her personal property";

4.   "K1 and other taxes resulting from [Cynthia's] gifts and inheritance"; and

However, if Henry sought any offsets to Cynthia's claim for reimbursement, he was required to prove them at trial. *See* TEX. FAM. CODE ANN. § 3.402(e); *Barras*, 396 S.W.3d at 177. Specifically, the Texas Family Code provides: "The party seeking an offset to a claim for reimbursement has the burden of proof with respect to the offset." TEX. FAM. CODE ANN. § 3.402(e).

Henry did not assert at trial that he was entitled to an offset of Cynthia's reimbursement claim based on the above, and he wholly failed to present any evidence "show[ing] the existence of, and his . . . entitlement to, . . . such offsets" or "their amounts." *See Barras*, 396 S.W.3d at 177. In other words, Henry simply did not meet his burden in regard to his claimed offsets, and the trial court did not err in not considering them when awarding Cynthia $813,988.71 on her reimbursement claim. *See* TEX. FAM. CODE ANN. § 3.402(e).

Finally, Henry asserts that although Cynthia sought reimbursement in the amount of $921,457.28 for "Enhancement in Value of [the Property]," she failed to provide evidence "to support" such an enhancement value. After performing various mathematical calculations in his brief, he claims that the correct enhancement value for the property is $159,888.

---

5. Cynthia's "legal expenses regarding her issues with her brother and sister regarding [her] father's estate."

Although Cynthia sought reimbursement in the amount of $921,457.28 for "Enhancement in Value of [the Property]," the trial court, as noted above, awarded Cynthia only $813,988.71 on her reimbursement claim. In its Additional Findings of Fact and Conclusions of Law, the trial court found that Cynthia had "met her burden in proving that she had a valid and enforceable reimbursement claim[] pursuant to the Texas Family Code" and "presented credible evidence, both testimonial and documentary, to support her claim."

Cynthia sought a total of $1,266,315.96 for reimbursement of eight separate expenditures, including the "Enhancement in Value of [the Property]." In awarding Cynthia only $813,988.71 on her reimbursement claim, the trial court did not break down the amounts that it awarded for each separate expenditure for which Cynthia sought reimbursement. Without such a break down, this Court has no way of knowing exactly how the trial court calculated its reimbursement award of $813,988.71. However, we must presume that it acted appropriately, including in its calculation of any "Enhancement in Value" for which Cynthia was entitled to reimbursement. *See Langan v. Langan*, No. 14-12-01134-CV, 2014 WL 3051216, at *8–10 (Tex. App.—Houston [14th Dist.] July 3, 2014, no pet.) (mem. op.) (trial court did not abuse its discretion where nothing in record "stat[ed] what reimbursement claims the trial court awarded or refused"); *Mize v. Mize*, No. 2-08-163-CV, 2009 WL 279335, at *9 (Tex. App.—Tyler Feb. 5, 2009, no pet.) (mem.

31

op.) (appellate court presumed trial court "applied the appropriate formulas in arriving at its number" where it awarded $24,677, but provided no breakdown); *Zieba v. Martin*, 928 S.W.3d 782, 787–89 (Tex. App.—Houston [14th Dist.] 1996, no writ) (trial court did not abuse its discretion where not clear from record "how the trial court determined the reimbursement amount").

Accordingly, we hold that the trial court did not err in awarding Cynthia $813,988.71 on her reimbursement claim.

We overrule Henry's third issue.

### Disproportionate Share

In his fourth issue,[15] Henry argues that the trial court erred in not awarding him a disproportionate share of the marital estate because it was "presented with evidence, testimonial and documentary, of [Cynthia's] extramarital affair and [his] attempts to reconcile after [his] discover[y] [of] the affair."[16]

---

[15] Much of Henry's discussion in his fourth issue amounts to nothing more than a repetition of the same arguments that he advances in regard to the above issues. *See supra*. We need not further address Henry's repeated arguments. *See* TEX. R. APP. P. 47.1. Further, having overruled his first, second, and third issues, we reject Henry's contention that the trial court's purported errors, "described" by him in his first, second, and third issues, rendered its division of the marital estate "manifestly unjust and unfair."

[16] Henry also argues that "[t]he trial court was presented with evidence, testimonial and documentary, of several checks drawn on [Cynthia's father's] . . . accounts that were signed by [Cynthia] with [her father's] forged signature." However, he does not explain how this allegation relates in any way to the trial court's purported error in not awarding him a disproportionate share of the marital estate. *See* TEX. R. APP. P. 38.1(i).

In a divorce decree, a trial court shall order a division of the parties' estate in a manner that it deems just and right, having due regard for the rights of each party. TEX. FAM. CODE ANN. § 7.001 (Vernon 2006); *In re Marriage of C.A.S.*, 405 S.W.3d at 384. A trial court has wide latitude and discretion in dividing the community estate of the parties upon dissolution of their marriage. *Vallone v. Vallone*, 644 S.W.2d 455, 460 (Tex. 1983); *In re Marriage of C.A.S.*, 405 S.W.3d at 384.

The property division need not be equal, and a trial court may consider many factors when exercising its broad discretion in dividing marital property. *In re Marriage of C.A.S.*, 405 S.W.3d at 384. For instance, a trial court may consider: the nature of the property; the relative earning capacity and business opportunities of the parties; the parties' relative financial conditions and obligations; the parties' educations; the size of the separate estates; the age, health, and physical conditions of the parties; fault in breaking up the marriage; the benefit the innocent spouse would have received had the marriage continued; and the probable need for future support. *See Murff*, 615 S.W.2d at 699; *In re Marriage of C.A.S.*, 405 S.W.3d at 384. Mathematical precision in dividing property in a divorce is usually not possible. *Murff*, 615 S.W.2d at 700. However, a disproportionate division must be supported by some reasonable basis. *Smith v. Smith*, 143 S.W.3d 206, 214 (Tex. App.—Waco 2004, no pet.). Notably, the party complaining of the division of the community estate has the burden of showing from the evidence in the record that the

trial court's division of the community estate was so unjust and unfair as to constitute an abuse of discretion. *In re Marriage of C.A.S.*, 405 S.W.3d at 384.

We note that a trial court may grant a divorce on the ground that one spouse has committed adultery. *See* TEX. FAM. CODE ANN. § 6.003 (Vernon 2006). However, it is within a trial court's discretion to choose between non-fault and fault-based reasons when deciding the grounds on which to grant a divorce. *Baker v. Baker*, 469 S.W.3d 269, 279–80 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *see also Clay v. Clay*, 550 S.W.2d 730, 734 (Tex. Civ. App.—Houston [1st Dist.] 1977, no writ).

Here, Cynthia pleaded insupportability as a ground for divorce. She testified that her and Henry's "marriage [had] become insupportable due to discord or conflict that [had] destroy[ed] the legitimate ends of the marriage" and there was "[n]o" chance of reconciliation. Cynthia and Henry had been "having marital problems," they "had not had a close marital relationship," and their relationship had "deteriorate[d] . . . over the previous 12 years." She and Henry had "discussed divorce" prior to their separation, "didn't speak very much," "didn't seem to have a lot of activities in common," and could not "find happiness." Moreover, according to Cynthia, Henry's "[d]rinking" "threatened [their] relationship."

The trial court specifically found that the marriage "ha[d] become insupportable because of discord or conflict of personalities that destroy[ed] the

legitimate ends of the marital relationship and prevent[ed] any reasonable expectation of reconciliation." And there is sufficient evidence to support the trial court's finding of insupportability.[17] *Cf. Lisk v. Lisk*, No. 01-04-00105-CV, 2005 WL 1704768, at *5 (Tex. App.—Houston [1st Dist.] July 21, 2005, no pet.) (mem. op.) (holding some evidence of probative nature to support trial court's decision to grant divorce on grounds of insupportability). Although there is evidence that Cynthia had a "relationship" with another man, the trial court was not required to grant the divorce on the ground of adultery. *See Applewhite v. Applewhite*, No. 02-12-00445-CV, 2014 WL 787828, at *1–2 (Tex. App.—Fort Worth Feb. 27, 2014, no pet.) (mem. op.) (holding trial court did not err in granting divorce on basis of insupportability rather than adultery); *Lisk*, 2005 WL 1704768, at *5 ("Husband's admission to an affair does not mean the trial court was required to grant Wife the divorce on the grounds of adultery . . . ."); *see also Baker*, 469 S.W.3d at 279–80 (trial court did not err in granting divorce solely on basis of insupportability and not cruelty). Because the trial court had sufficient evidence to grant the divorce on the ground of insupportability, and was not required to grant the divorce on the ground of alleged adultery, it did not err in granting a no-fault based divorce. *See Applewhite*, 2014 WL 787828, at *1–2; *Lisk*, 2005 WL 1704768, at *5.

---

[17]     Henry does not assert that there is insufficient evidence to support the trial court's finding of insupportability.

35

Further, in regard to the trial court's property division, we note that, contrary to Henry's assertion, the trial court did actually consider "[Henry's] allegations that [Cynthia] had participated in an extramarital affair" when it "determin[ed] . . . a just and right division" of the marital estate. Notably though, the trial court was not obligated to award Henry a disproportionate share of the marital estate on account of Cynthia's purported affair. *See Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex. 1987) (holding trial court not required to divide estate disproportionately simply because husband committed adultery); *Logsdon v. Logsdon*, No. 02-14-00045-CV, 2015 WL 7690034, at *8–9 (Tex. App.—Fort Worth Nov. 25, 2015, no pet.) (mem. op.) ("While the trial court granted the divorce partially on the ground of adultery by Husband," "no requirement exists that this fact[] [would] result in a disproportionate property division in favor of Wife."); *Lisk*, 2005 WL 1704768, at *6 (holding trial court did not err in "not granting [wife] a more disproportionate share of the community estate" where evidence of husband's affair uncontested).

Fault is just one "of the many factors a trial court should consider when dividing a marital estate." *Stafford*, 726 S.W.2d at 16; *see also Murff*, 615 S.W.2d at 699. And, here, the trial court made clear that it considered numerous factors, including the purported affair, when it determined "a just and right division" of Cynthia and Henry's marital estate.[18] *Cf. Lisk*, 2005 WL 1704768, at *6 (trial court

---

[18] Specifically, the trial court stated that it considered the following:

36

"looked beyond" affair and disparity in income factors and "also considered the amount of income Wife would receive . . . , the earning capacity she enjoyed from her advanced degrees, her good health, Husband's assumption of the community's tax liability, and the age and health of the children[,] when making what it considered to be a just and right division of the marital estate").

We conclude that the trial court's division of the marital estate was not so unjust and unfair as to constitute an abuse of discretion.[19] Accordingly, we hold that

---

a.     "The value of the community assets";

b.     "The contributions made by each party's separate estate for the payment of unsecured liabilities";

c.     "The value of the capital improvements made to community assets and paid for by a party's separate estate's contributions";

d.     "The assets being received by each party and the value thereof";

e.     "The amount of the reimbursement claim awarded to the separate Estate of Cynthia . . .";

f.     Henry's "allegations that [Cynthia] had participated in an extramarital affair";

g.     "The spouses' abilities to support themselves";

h.     "The expenses paid by each party's separate estate to maintain community property while the case was pending";

i.     "The length of the marriage"; and

j.     "The nature of the marital property."

[19]     We also note that, with the exception of the property, "all remaining [community] assets were divided between the parties by agreement as evidenced by Exhibit 'A' to the Final Decree of Divorce." Henry does not challenge this agreed-upon division of the marital estate.

the trial court did not err in not awarding Henry a disproportionate share of the marital estate.

We overrule Henry's fourth issue.

## Due Process

In his fifth issue, Henry argues that the trial court "denied [him] due process of law" because it "failed to ensure the final disposition of the case within 6 months from the appearance date"; "ordered the withdrawal of [his] [c]ounsel four days before entering the Final Decree of Divorce"; "entered the Final Decree of Divorce four days after ordering the withdrawal of [his] counsel"; "failed to timely file the [findings of fact and conclusions of law] requested by [him]"; signed Cynthia's proposed findings of fact and conclusions of law; "failed to timely cause the filed [findings of fact and conclusions of law] to be mailed" to him; and "failed to set a hearing on [his] timely Motion for New Trial, or address in any way, [his] [m]otion."

Notably, the portion of Henry's brief devoted to his "due process" issue contains only a citation to the Texas Constitution[20] followed by the above-mentioned list of the "many times" that he was "denied due process of law."[21]

---

[20]     *See* TEX. CONST. art. I, § 19.

[21]     Henry does not address his due-process complaint in his reply brief or respond in any way to Cynthia's arguments in her appellee's brief regarding this issue.

38

As previously noted, Texas Rule of Appellate Procedure 38.1(i) requires that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). "It is [an] appellant's burden to discuss [his] assertions of error," and the appellate court has "no duty—or even right—to perform an independent review of the record and applicable law to determine whether there was error." *Bullock v. Am. Heart Ass'n*, 360 S.W.3d 661, 665 (Tex. App.—Dallas 2012, pet. denied) (issue waived on appeal where appellant provided "no legal analysis"); *see also Barham v. Turner Constr. Co. of Tex.*, 803 S.W.2d 731, 740 (Tex. App.—Dallas 1990, writ denied) (pro se appellant bears burden of discussing his assertions of error). An issue that is inadequately briefed is waived on appeal. *See Fredonia State Bank*, 881 S.W.2d at 284–85; *Morris v. Am. Home Mortg. Servicing, Inc.*, 360 S.W.3d 32, 36 (Tex. App.—Houston [1st Dist.] 2011, no pet.)

Here, although Henry presents this Court with a long list of purported trial court errors, he does not provide any analysis, discussion, or support for his assertion that such errors amounted to a denial of due process. *See Thompson*, 2015 WL 3981799, at *3 (issue waived where appellants did not "present[] a cogent argument to support [their] issue"); *Izen v. Comm'n for Lawyer Discipline*, 322 S.W.3d 308, 321–22 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (brief containing "conclusory statements, unsupported by legal citations" and no "clear argument"

inadequate (internal quotations omitted)); *see also Henson v. Tex. Health & Human Servs. Comm'n*, No. 03-13-00621-CV, 2015 WL 6830677, at \*2 n.4 (Tex. App.— Austin Nov. 5, 2015, no pet.) (mem. op.) (due process issue inadequately briefed and waived where appellant "fail[ed] to explain how her rights ha[d] been violated"); *Cruz v. Van Sickle*, 452 S.W.3d 503, 512–13 (Tex. App.—Dallas 2014, pet. denied) (due process complaint waived where appellant did "nothing more than reference certain constitutional provisions").

Accordingly, we hold that Henry has waived his due-process issue.

## Conclusion

We affirm the judgment of the trial court and grant Cynthia's "Motion to Strike [Henry's] Supplemental Appendices and Any Reference to those Supplemental Appendices in [His] Brief," to the extent that she requests that we not consider matters outside of the appellate record and strike the portions of Henry's appendices containing such matters as well as any references to matters outside of the record that are contained in Henry's briefs.

Terry Jennings
Justice

Panel consists of Justices Jennings, Keyes, and Bland.

40